### THE STATE OF CONNECTICUT *against* LEACH.

A person confined in gaol, by virtue of a void warrant, may lawfully liberate himself, by breaking the prison, using no more force than is necessary to accomplish this object.

Nor is it a crime or misdemeanour in such person, that while his sole object was to liberate himself, other persons lawfully confined for atrocious crimes in the same room with him, in consequence of such prison-breach, made their escape.

THIS was an information against *Stoddard Leach* in two counts.   In the first, it was alleged, that on the 15th of *June* 1828, the defendant, being a lawful prisoner in the common gaol of *New-Haven* county, confined by virtue of a warrant particularly described, with *William Hunt, William N. Williams* and sundry other persons legally confined in said gaol, for having committed divers atrocious crimes and misdemeanours, with force and arms, and with intent to effect his own

escape, and for the purpose of effecting the escape of said <span>New-Haven,</span> other prisoners, wickedly and feloniously sawed off the iron <span>July, 1829.</span> grates and bars to the windows of said gaol, and removed large quantities of the stone from the walls of said gaol. In the second count there was no allegation, that the defendant was confined in gaol; but it was alleged, that he broke the prison, wickedly and feloniously, with the felonious intent that certain persons confined in the gaol for certain atrocious crimes, should make their escape. The offence in each count, was charged as a high crime and misdemeanour at common law.

State
v.
Leach.

On the trial, at *New-Haven, January* term, 1829, before *Peters*, J., it was proved, that at the time mentioned in the information, the defendant was confined in the same room in the gaol with the other prisoners; and it was admitted, that he in no other way attempted to effect their escape, than as a consequence of the attempt to effect his own escape.

From the judgment upon which the warrant mentioned in the information was issued, adduced in evidence by the defendant, it appeared, that such warrant was issued on the complaint of *Alanson Clark* of *Orange*, alleging, that "the said *Stoddard Leach*, on the 9th of *May*, 1828, at said *Orange*, with force and arms, did unlawfully and feloniously break and enter into the dwelling-house of *Amos Clarke*, situated in said *Orange*, in the day-time, to wit, about 3 o'clock in the afternoon, and did then and there feloniously steal, take and carry away from the said house a large sum of money, to wit, the sum of 25 dollars in specie, the property of *Ira Clarke* of said *Orange*, against the peace, and contrary to the statute in such case made and provided;" that the defendant, being brought before *Daniel Treat* Esq., justice of the peace, and required to make answer to this complaint, pleaded *guilty;* and that said justice, having found the facts alleged in the complaint to be true, and that the amount of the money stolen was 25 dollars, ordered the defendant to become bound in a recognizance, with surety, to appear before the county court of *New-Haven* county, and answer to the matters in said complaint alleged, and in default of such recognizance, to be committed to the common gaol in *New-Haven* county, therein to be held until discharged by due order of law. It was proved, that the complaint was made by *Alanson Clark*, in the capacity of a private person, and not as an informing officer.

Upon these facts, the defendant, by his counsel, claimed, and

prayed the judge to instruct the jury, that his imprisonment under such warrant was illegal, and that he had a right to do the acts charged in the information. The judge instructed the jury, that the warrant was illegal; yet if they should find, that the defendant was confined in gaol under such warrant, and that he did the other acts charged in the information, they ought to find him *guilty*. The jury found the defendant guilty accordingly; and he moved for a new trial, for a misdirection.

*Chapman* and *Harrison*, in support of the motion, contended, 1. That in order to convict a person of prison-breach, it must be averred in the information, and proved on the trial, that the defendant was *lawfully* confined. *Arch. Crim. Pl.* 19. 22. 306. 1 *Russell on Crimes* 547. 551. 555. 2 *Swift's Syst.* 373. A person imprisoned under a void warrant, as this was, is unlawfully imprisoned, and may rightfully use the force necessary to effect his liberation.

2. That as this information alleges a *lawful imprisonment* of the defendant, it was, at any rate, necessary, in this case, to prove such allegation. All the facts, circumstances, intent, &c. must be proved as laid. 2 *Swift's Dig.* 405. 1 *Chitt. C. L.* 559. *Arch. Cr. Pl.* 19. 22.

3. That if the act of the defendant in effecting his own escape, was lawful, he is not answerable for the consequences. It was not his fault that he was put into a room with prisoners legally confined, and that when he came out, they escaped with him. The motion explicitly states, that the defendant in no other way attempted to do the acts charged, than to effect his own escape. This precludes the idea of any *intention* in the defendant to effect the escape of the other prisoners, except as a necessary consequence of his own liberation.

*N. Smith* and *J. M. Edwards*, contra, contended, 1. That the defendant, being confined under a process apparently regular and legal, could not forcibly break the prison; but it was his duty to apply for a writ of *habeas corpus*, on which he might be discharged. At any rate, he must conduct reasonably. Though a man may repel force by force, when assaulted, he may not *repay* force with force. He must make demand to be admitted to his liberty, before he proceeds to acts of violence. He may not, in the first instance, knock down the gaoler, or break down the gaol, to get out.

2. That the defendant was liable to conviction on the second count, which does not allege a lawful commitment, for letting out the other prisoners. The jury, under the charge, must have found *an intent* to liberate the other prisoners. This is explicitly alleged in the information ; and the judge submits to the jury the question whether the defendant did the acts so alleged. Now, if the defendant had a right to liberate himself, still he had no right, *intentionally*, to let out other prisoners lawfully confined. The admission that the defendant effected the escape of the other prisoners in no other way than as a consequence of his own escape, is not inconsistent with an intention in him to effect their escape. Suppose it had been his *sole object* to effect their escape ; in what way could he better do it than by breaking the prison and going out first himself, thus shewing them the way, and leaving them to follow ? What other act would be necessary than what the defendant did in this case ?

In reply, the counsel for the defendant said, that no previous demand on the gaoler to be liberated, was necessary. This is not like the case of an officer coming with a warrant to make an arrest. A man is not bound to know, that an officer is one, or that he has a warrant, until he shews his authority. But here the warrant was void on the face of it. This the magistrate who issued it, the officer who served it, and the gaoler who held the defendant under it, must be taken to have known : all knew that the defendant was illegally confined and entitled to an immediate discharge.

DAGGETT, J. It appears from the motion, that the prisoner was confined in gaol ; and that he attempted to effect the escape of the other prisoners, in no other way or manner, than as a consequence of the attempt to effect his own escape. By this we are doubtless to understand, that the only object of the prisoner was to free himself from confinement, and if, in effecting this object, persons legally imprisoned escaped, he disregarded such consequences.

The statute creating the offence with which the prisoner was charged, and for which he was committed, was repealed before the acts alleged to be a crime, were done ;(*a*) the complaint on

(*a*) The statute referred to, is the 41st section of the " act concerning crimes and punishments," revision of 1821, which was repealed in *May* 1825.

*New-Haven.* which the warrant for his arrest issued, was illegal, not being
July, 1829. made by an informing officer ; and the court before which the

State *v.* Leach.
prisoner was committed to appear, had no jurisdiction of the crime charged.

I am of opinion that the direction to the jury was erroneous. The act of the prisoner in question was so far from being a high crime and misdemeanour, that it was justifiable. And here it is not intended to suggest, that a prisoner might not do acts which would be unjustifiable, in order to escape from unlawful imprisonment. He might not, for example, kill the gaoler, or set the prison on fire, or totally demolish it ; for none of these acts might be at all necessary to effect his object. But he might lawfully free himself from this imprisonment ; since it is confessed to have been illegal. It appears, that all the proceedings were void. A void process is no process. The complainant,—the justice of the peace who ordered him to be committed,—the sheriff who executed the pretended warrant,— and the gaoler who held him under it,—are all liable for false imprisonment. This is the undoubted doctrine of the common law from the time of the *Marshalsea* case, 10 *Co.* 68. to this day. It hence results, that the keeper of the gaol is vested with no authority ; the building in which the prisoner was confined, is not a gaol, but as to him, a mere private building ; and hence he might regain that liberty of which he was unjustly deprived ; and it is no part of the case that he made use of more force than was necessary to accomplish this object. Nor does the fact that he was confined with certain atrocious offenders, render it less proper for him to effect his escape.

There must, therefore, be a new trial.

The other Judges were of the same opinion ; PETERS, J. at first dissenting, but ultimately concurring.

New trial to be granted.

