## SCHROEPEL *vs.* TAYLOR.

An *attachment* against the property of a person who temporarily resided in a county where the process issued, was held good on a bill of exceptions, although *his usual place of residence* was shewn to be in *another county;* it appearing that the attachment issued on due proof and the proper bond being given, and it being stated that there was no evidence that the person against whom *trover* was brought for the property taken under the attachment knew the defendant in the attachment, or where he resided, or that he had a family.

A *justice of the peace* may issue process and make it returnable *at any place* in the county in which he is an officer.

ERROR from the Onondaga common pleas. Taylor sued Schroepel in the Onondaga common pleas, in an action of *trover,* for two horses and other property deposited with the defendant by a constable, who had taken the same by virtue of two attachments against the plaintiff. It appeared that in *November,* 1829, Taylor came into the town of *Volney,* in the county of *Oswego,* to assist one Chace, who had taken a job of the defendant to clear a quantity of land ; that he brought with him horses and certain furniture for house keeping, and was to receive of Chace $12 per month for his services and the use of the property ; the plaintiff and Chace lived in a *shanty* while they worked on the job, but went away before the job was completed. On the 14th *December,* 1829, an attachment was issued against the property of the plaintiff at the suit of one Soule, by a justice of the peace of the town of *Hastings,* in the county of Oswego, returnable at the dwelling house of the defendant in the town of *Volney,* where the justice was when the attachment was issued, he attending there at the request of the defendant, and being the nearest justice in the county of Oswego to the dwelling house of the defendant. The attachment was taken out on the oath of the applicant, and the justice testified that it was issued on *due proof* and *proper bond being given.* The defendant signed the bond, (probably as surety.) The plaintiff proved that he was a resident of the town of *Manlius,* in the county of *Onondaga,* where he had a family for which he provided ; but there was no ev-

idence that the defendant knew the plaintiff, or where he resided, or that he had a family. The constable to whom the attachment was delivered, seized the property in question and put it into the hands of the defendant, who gave a receipt for it, to be delivered to the constable when called for. A copy of the attachment was left by the constable at the *shanty*, which had been inhabited by the plaintiff and Chace. A demand of the property and refusal to deliver it was shewn. The counsel for the plaintiff insisted that the attachment was void, 1. Because the justice, when he issued the same, was not in the town in which he resided, but in an adjacent town, nor was the attachment made returnable in the town in which the justice resided; and 2. Because the plaintiff was not a resident in the county of Oswego when the attachment was issued, within the meaning of the statute, and was not liable to be proceeded against by attachment. The common pleas sustained these positions, and charged the jury that the plaintiff was entitled to recover. The jury found a verdict for the plaintiff for $228, $\frac{69}{100}$, on which judgment was entered. The defendant having excepted to the charge of the court, sued out a writ of error.

*J. A. Spencer*, for plaintiff in error. The justice had authority to issue the attachment, although not at the time in the town in which he resided, and had a right to make it returnable before him at any place in the county; until 1830 there was no limitation of his power in this respect. The defendant below was properly proceeded against by attachment; such process cannot issue where the defendant is merely a transient person, but it may where he has taken up a temporary residence in a place, and absconds leaving property. At all events, the attachment being good on its face, the officer was protected; and if so, the defendant, as the agent of the officer, was equally entitled to protection.

*B. Davis Noxon*, for defendant in error. The attachment was void, being issued and returnable in a town in which the justice did not reside; the justice was not an officer of that town. 1 *Cowen*, 550. 6 *id.* 642. 9 *id.* 640, *S. C. in er-*

*ror.* The defendant below could not be proceeded against by attachment in the county of *Oswego ;* he was a resident of the county of *Onondaga,* being at work in Oswego only as a hired man ; Oswego was not his usual place of residence. In *Dudley* v. *Staples,* 15 *Johns. R.* 196, the court say the obvious intention of the act was to give the process of attachment against the property of a person who had absconded or departed from *his usual place of residence.* In that case an attachment issued against a person not an inhabitant of the county in which the process issued was held void. Even the officer here would not have been protected ; he was bound to know that the individual claiming to act as a justice was a justice, and had authority to act in the place where he assumed to exercise his functions ; but if the officer was protected, the defendant was not, for he acted with full knowledge of all the circumstances ; he knew that the justice was out of his own town, and that the shanty was not the usual residence of the plaintiff.

*By the Court,* SAVAGE, Ch. J. The question to be decided by this court is whether the attachment was void for either or both the reasons assigned by the court below. I will consider them separately.

1. The justice acted, in issuing the attachment, while he was in point of fact out of the town in which he resided. The acts of the justice in this case were done in 1829, before the revised statutes took effect. Those statutes, therefore, cannot be considered in deciding this question. In the case of *Guernsey* v. *Lovell,* 9 *Wendell,* 319, the jurisdiction of justices of the peace was considered. In England they always were and now are *county officers.* They were such in this state unquestionably until 1818. The jurisdiction of each justice was coextensive with the county ; they all possessed a concurrent jurisdiction in civil and criminal proceedings. There were certain powers, however, which they exercised as officers of the *town* : they presided at town meetings ; they, with the supervisor, composed the commissioners of excise ; they assisted in auditing town accounts ; they made orders respecting paupers and bastards, &c. In these cases and some others, the statutes had conferred powers upon justices of the town

in which those powers were to be exercised. But in the trial of civil causes, any justice of the county might act any where in the county; and such was the practice. The act of 1818 limited the number to four in each town; from this it followed that a justice removing from the town of his residence vacated his office, but the statute limiting the number, made no other alteration in the powers and duties of the office. The jurisdiction of the officer was the same as before; that act affected only the tenure of the office, not the jurisdiction. The act of 1824 made no change in the tenure or the jurisdiction of the office. Until 1830, therefore, there was no law prohibiting, either expressly or by implication, any justice of the peace from issuing process and trying causes in any part of the county in which he resided, provided his residence continued the same as when he was appointed or elected to office. The mode of appointment to the office certainly could make no difference in the powers or extent of jurisdiction of the officer. The office of constable is, strictly speaking, a town office, yet the jurisdiction is coextensive with the county. The constable also loses his office by removal; but while he resides in the town which gave him the office, he may exercise the office any where in the county. On this point my conclusion is, that until 1830 the office of justice might be exercised any where within the county, and that the attachment in question was regularly issued, in so far as respects the place where the act was done.

2. The defendant in the attachment was in point of fact an inhabitant in the town of Manlius, in the county of Onondaga, where he had a family for which he provided. The statute under which the attachment was issued, authorized any justice of the peace of any county, on proof by a creditor that any person against whom he has a demand hath departed or is about to depart from such county, or is concealed within the same with intent to defraud his creditors, or to avoid the service of process, to issue an attachment, &c. the justice taking a bond according to the statute. In *Adkins* v. *Brewer*, 3 *Cowen*, 206, it was decided that a justice who issued an attachment without such proof and security as the statute requires, acted without any jurisdiction and was liable as a tres-

passer; but if the proof and security had been given, and it subsequently appeared that the facts proved were in point of fact untrue, that could not have rendered the justice a trespasser. *When they are proved by such evidence as the statute* required, then the justice has jurisdiction and his process is valid; it is proper therefore to inquire what was the proof before the justice. It appears by the testimony of the justice that one Ephraim Soule applied to him for an attachment against Taylor, and *on due proof and the proper bond being given*, he issued the attachment. The attachment issued and bond taken were produced and read in evidence; it was taken out on the oath of the applicant. From the bill of exceptions, then, it appears that the attachment was issued on *due proof*, which we must understand to be the proof required by the statute; and it affirmatively appears that there was no evidence shewing that the defendant below, Schroepel, knew the plaintiff Taylor, or where he resided, or that he had a family; and it may be added that it does not appear that the justice had any knowledge on that subject, or that the proof before him was any thing but *due proof*. It was shewn, on the trial of this cause in the court below, that Taylor and one Chace were strangers in Volney, and that Taylor was called Johnson; that Chace had taken a job of clearing land, and that he and Taylor had lived in a shanty for a month or more near the job, and that they both went away before the job was completed. The case of *Dudley* v. *Staples*, 15 *Johns. R.* 196, was cited to shew that an attachment can only be issued against a person who has departed from his usual place of residence, and not where he might be occasionally travelling through a county. It must be borne in mind that that case came up on *certiorari*, and it appeared from the return of the justice that the proof upon which he issued the attachment was, that an attempt had been made to serve a warrant upon the defendant, and that he ran away to avoid the service, and was then absconding to avoid such service. In that case, the attachment was served by leaving a copy at the plaintiff's store, where the defendant had been shortly before. It also appears in that case, that on the return of the attachment, the defendant appeared and objected to the proceedings as im-

properly commenced. The fact of his residence in another county must have been proved or admitted, and appeared upon the return. The objection to the service of the attachment must in that case have been made to the justice and overruled by him. So had the defendant in the attachment here appeared before the justice and shewn the fact of his residence in another county, and the other facts which appeared on the trial of this cause, he would have been entitled to a judgment in his favor. The question here, however, is not whether a judgment rendered by a justice under the circumstances disclosed should be reversed on certiorari, but whether an attachment issued on *due proof* is a valid process. There is no evidence in the case to shew that the justice acted without a compliance with the requirements of the statute; the evidence is that the proper evidence and security were given; the attachment was therefore regularly issued. The justice, having jurisdiction, the attachment was a justification to the constable, and the defendant in the court below, the plaintiff in error, was the agent or servant of the officer; he took the property from the officer and gave a receipt for it. It also appears that the plaintiff in error sent for the justice, and executed the bond upon which the attachment issued, which is all the agency which he appears to have had in the business; he was ignorant of the fact that Taylor had any residence out of the town of Volney, or that he had a family or a place of residence out of the town of Volney. On the second point, therefore, my conclusion is that the attachment, having been issued upon due proof and security, was a valid process and a justification to the officer and those who acted at his instance or under his authority.

On the whole case therefore, as presented on the bill of exceptions, the plaintiff below failed to shew any cause of action. The judgment of the court of common pleas for the county of Onondaga should therefore be reversed, and a venire *de novo* be awarded; costs to abide the event.