(61 Misc. Rep. 165.)

### ACKERMANN v. BERRIMAN et al.

(City Court of New York, Special Term.   November, 1908.)

1. CRIMINAL LAW (§ 207*)—CITY MAGISTRATES—POWERS.

    Under Laws 1813, p. 342, c. 86, special justices of the peace were provided for in the city of New York, having such powers as were exercised by justices of the peace in different counties in the state, with authority to issue summons in civil and criminal cases. Laws 1848, p. 249, c. 153, provided for the election of justices of the peace in said city, having the power and jurisdiction of such special justices, with authority to issue necessary process. Laws 1895, p. 1283, c. 601, abolished the office of police justice and created that of city magistrate, and by section 3 such magistrates were given all the powers vested by law in police justices, with certain exceptions. *Held*, that such magistrates have power to issue summons for persons accused of larceny.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 440; Dec. Dig. § 207.*]

2. MALICIOUS PROSECUTION (§ 8*)—SUMMONS ISSUED BY CITY MAGISTRATE.

    The issuance by a city magistrate of a summons to a person accused of larceny and service thereof commences a judicial proceeding, which may form the basis of an action for malicious prosecution.

    [Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 8; Dec. Dig. § 8.*]

3. PROCESS (§ 1*)—"PRECEPTS."

    A precept is a command or mandate in writing of equal importance with a writ or process.

    [Ed. Note.—For other cases, see Process, Dec. Dig. § 1.*

    For other definitions, see Words and Phrases, vol. 6, p. 5494.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PROCESS (§ 1*)—"PROCESS" AND "SUMMONS" DEFINED.

The words "process" and "summons," as used in the common law and in the statute, are often synonymous, and it has been settled at common law that process and summons were synonymous. Process is the means by which' the court compels the appearance of the defendant before it, and summons is the first process in the institution of an action whereby the defendant is notified to appear and answer the complaint.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*

For other definitions, see Words and ·Phrases, vol. 6, pp. 5643–5651; vol. 7, pp. 6787, 6788; vol. 8, pp. 7766, 7810.]

Action by Adolph L. Ackermann ·against Matthew W. Berriman and others. Demurrer to complaint overruled.

Thomas & Oppenheimer, for demurrer.

J. Baldwin Hand, opposed.

O'DWYER, C. J.   The complaint alleges that the defendants complained before a magistrate of the city of New York that the plaintiff had stolen property belonging to the defendants, and accused him before said magistrate of the larceny of the same, and thereupon applied to and procured from said magistrate a summons requiring the plaintiff to answer to said complaint; that the plaintiff appeared in the magistrates' court at the time specified in and as required by said summons, and the magistrate, after hearing the testimony produced, discharged the plaintiff.   Then follow the usual allegations in an action for malicious prosecution.   In support of the demurrer, defendants insist that the complaint is insufficient on the ground that there is no allegation in the complaint of the facts essential to constitute a cause of action for malicious prosecution, and argue that it is necessary for the plaintiff to show the commencement or continuance of an original criminal or civil judicial proceeding; that the issuance of the summons was without warrant in law; that it was not a legal process, and service thereof did not commence a judicial proceeding; that the summons amounted to no more than an invitation to call.   The defendants taking the position that the magistrates of this city are without jurisdiction to issue a summons, I have carefully examined the law, and am satisfied that the power to issue summonses has been given to the magistrates by statute, and by long usage has become a part of the law and procedure of their courts.   The following comprehensive memorandum, prepared by Magistrate Barlow, President of Board of City Magistrates, is cited with approval in support of the conclusion arrived at upon the question of the authority to issue a summons in a magistrate's court:

"Peter T. Barlow, Magistrate.   Section 74 of the Code of Criminal Procedure provides that the police justices shall have such jurisdiction, and such only, as is specially conferred upon them by statute, and this limitation has been construed in People v. Patterson, 38 Misc. Rep. 81, 77 N. Y. Supp. 155, Matter .of McMahon, 64 How. Prac. 285, and People v. Van Houten, 13 .Misc. Rep. 603, 35 N. Y. Supp. 186, to similarly confine the jurisdiction of the city magistrate.   If, therefore, there is no authority based upon statutory enactment for the issuance of the summons as a process of the court, there is no power in the magistrates to issue the same.   The uninterrupted continuity of

the legislation affecting these courts and the investment in successive boards of police justices of the powers of their predecessors is what is mainly responsible for the possibility of the question being raised as to the legality of the summons or the right of the court to issue it, and the foundation of such doubt can only lie in the fact that as time has gone on the functions of the police courts have been limited exclusively to criminal proceeding, and sight has been lost of the fact that process can be issued in criminal as well as in civil actions. The earliest legislation on the subject following the Montgomery charter of 1730 was a law passed April 9, 1813 (Laws 1813, p. 342, c. 86), reprinted in a volume of laws of the state of New York, relating particularly to the city of New York, published by the authority of the corporation of the city in 1833. By this act it was provided that, in addition to the chancellor, judges of the Supreme Court, the mayor, the recorder, and the chief of the aldermen, who were required to be in attendance at the police office therein referred to, three justices were to be appointed as often as were deemed necessary, each of whom was to be denominated in the commission to him a special justice for preserving the peace in the city of New York, and who, within the said city, should execute the like authorities which by law 'vested in justices as conservators of the peace.' By section 41 of this statute it is provided that 'the special justices for preserving the peace in the city of New York, and each of them, shall have and exercise the like powers in said city as are now exercised by justices of the peace in the different counties of this state,' but they were not permitted to try cases for the recovery of debts. By chapter 58, p. 107, of the Laws of 1832, the common council of this city was authorized to appoint an additional police or special justice for preserving the peace of the city, and it was provided that 'such additional special judge shall have the like powers and perform the same duties as are now by law conferred upon or required from the special justices of the city of New York, and receive like compensation.' The said justices were by the laws of April 9, 1813, given power to appoint a clerk. The clerk was required to reduce to writing all examinations and depositions, make out in due form all recognizances and 'all warrants and other precepts.' There was no change in the law up to 1833. Did these special justices have authority to issue summons? We have seen that by section 41 they were to have and exercise the like powers in the city of New York as were exercised by justices of the peace in the different counties of the state, save that they could not try causes for the recovery of debts. We also find that the clerk was required to make out all warrants and other precepts. Of course, if the justices of the peace in the different counties in the state had the power to issue a summons, and if the word 'precept' includes a process or summons, then the justices appointed under the act of 1813 had the power to issue a summons. The question of the power of the justices of the peace to issue process was raised out of proceedings arising in 1829, and came before the Supreme Court in the case of Schroepel v. Taylor, 10 Wend. 196, where the court, speaking through Chief Justice Savage, decided that a justice of the peace may issue process and make it returnable at any place in the county in which he is an officer. It follows, therefore, that the special justices for preserving the peace in the city of New York had the right to issue a summons.

"It was made the duty of the clerk to prepare all warrants and other precepts. A warrant is in itself a precept or process of the court. What other precept is there that a police justice could issue? This brings us back to elementary definitions. A precept is a command or mandate in writing of equal importance with a writ or process. 22 Am. & Eng. Ency. of Law, 1172. It may be urged, however, that under the very statute creating this court the assistant justices had also the power, in addition to disposing of criminal cases, to try actions in tort, and that the precept mentioned in the statute referred only to the civil side of the court; but the answer to this assertion is found in the fact that it has been judicially determined that a precept applies to a criminal as well as a civil proceeding. The question was raised in the state of Massachusetts under a statute similar to ours upon a writ of habeas corpus in the case of Adams v. Vose, 1 Gray (Mass.) 51, 58, Rufus Choate appearing as Attorney General in opposition to the writ. It was contended on the part of the relator that the word 'precepts' did not refer to criminal cases,

and had reference only to civil cases, but the court held that the words 'writs' and 'precepts' did include process in criminal cases. That case has not been overruled, nor the soundness of its decision questioned. Therefore, applying the law of that case to the act of 1813, it would seem that the justices appointed by that act not only had the right to issue a summons, but it was made the duty of the clerk to prepare the precept, which, as we have seen, is a writ of equal importance with a process.

"By chapter 11, p. 9, of the Laws of 1833, proceedings before the magistrates were regulated, but no change was made in the jurisdiction of the assistant justices. Revolution came in the police courts as it came in other parts of the world in the year 1848. By chapter 153, p. 249, of the Laws of 1848, the city of New York was divided into six judicial districts, in each of which there were established a police and justice's court. Sections 2 and 6 refer to the civil justices. Section 7 provides for the election in each of said districts of a police justice, and vests said police justices thus elected with 'all the powers,' and gives them jurisdiction to 'perform all the duties' of the special justices for preserving the peace in the city of New York. Section 8 provides for the rotation of police justices and police clerks. Section 9 provides for the salaries of the justices elected under this act. Section 12 provides for the turning over by the assistant justice and special justices for preserving the peace to the justices and police justices elected under this act of all the papers and documents in their possession; that is to say, the civil suits to the justices, and the criminal proceedings to the police justices; and then it says in its enactment: 'The courts hereby created.' It will be seen that the section does not say 'the civil court,' but says 'the courts,' that is to say, 'the police justices' courts and the civil justices' courts hereby created may issue all process necessary or proper to carry into effect the purpose of this act.' Therefore, the police justices, not only by reason of the enactment which vested them with all the powers that the special justices had, but because of the enactment which gave them the right to issue all process 'necessary or proper,' were given the jurisdiction to issue a summons. The words 'process' and 'summons' as used in the common law and as used by the statute are often synonymous, and indeed it has been settled at common law that 'process' and 'summons' were synonymous (1 Nichols, Pr. § 698, p. 711). And again, to recur to elementary definition: 'Process is a means whereby a court compels the appearance of the defendant before it or a compliance with its commands.' 'Summons is the first process in the institution of an action whereby the defendant is notified to appear at the proper time and place to answer the complaint against him.' 20 Ency. Pl. & Pr. 1101. This is precisely the language of our form of summons. In 1 Chitty on Pleadings (16th Am. Ed.) 106 (cited 20 Ency. Pl. & Pr. 1102, note 3), it is said: 'The great variety of writs and bills led to so much intricacy and confusion that as regards personal actions the former writs, bills, and proceedings were abolished, and the writs of summons, capias, and detainer were introduced, which writs do not as formerly set out the whole form and cause of action, but are only adopted as modes of bringing the defendant into court, and then, and not before, the declaration stating the full form and cause of action is delivered.' It seems indisputable that the Legislature by the use of the words 'precept' and 'process,' and the continuation of the powers, gave the police justices elected under the Laws of 1848 the right to issue a summons. So far as the police justices were made elective, the law of 1848 was repealed by chapter 538, p. 844, of the Laws of 1873, and the police justices were appointed thereafter; but the statute distinctly provided that the police justice so appointed shall have 'all power, authority and duty now appertaining to any police justice in the city of New York, or which may appertain to any such justice then in office under the laws heretofore existing.' Of course, if the police justices under the act of 1848 had the power to issue a summons, those appointed under the Laws of 1873 had a similar power. This provision of the Laws of 1873 was incorporated in the Consolidation Act (Laws 1882, pp. 379–386, c. 410) §§ 1541 to 1568. By chapter 601, p. 1283, of the Laws of 1895, the office of the police justice was abolished, and that of the city magistrate was substituted. Section 3, c. 601, p. 1284, of the Laws of 1895, provided that 'the city magistrates appointed pursuant to this act shall have and exercise

all the powers and jurisdiction not inconsistent with the provisions of the act which on the 30th day of June, 1895, shall be vested by law in the police justices, except proceedings respecting bastards.' Therefore, to the magistrates was given the same power that the police justices had under the appointing act of 1873, to whom was given the same power that the police justices had under the elective law of 1848, to whom was given the same power that the special justices for the preservation of the peace had under the appointive law of 1813, to whom was given the same power vested in the police justices in the counties outside of the city of New York, except to try actions for debt, and these had the power to issue summons, process, or precept. Call the paper by whatever name you will, it is embraced within these terms 'precept' or 'process,' and within the original power of the justice of the peace to issue the summons. Therefore, the requirement of section 74 of the Code of Criminal Procedure that the magistrate shall have only such power as is vested by statute is complied with, for statute after statute has continued this power in the police justice and the magistrate.

"And there is not only statutory recognition of the right to issue a summons, but the summons has received recognition as a valid process of the court by judicial decision. Title 9 of part 6 of the Code of Criminal Procedure refers to special proceedings of a criminal nature. Of these the magistrates are given jurisdiction, and, indeed, under section 12 of the Penal Code, are vested with power to suspend sentence upon conviction and place the offender under probation. One of the proceedings of a criminal nature embraced within part 6 is a proceeding respecting masters, apprentices, and servants. By section 931 it was provided that, if a master be guilty of cruelty to his apprentice or servant, the latter may make his complaint on oath to any magistrate, who must do, what? Not issue his warrant, but, says the statute, 'summon the defendant before him at a specified time and place.' Now, if the magistrate had only the power to issue his warrant and no other writ, why use the word 'summons'? If the magistrate had no power to issue a summons, what is the meaning of the word 'summons'? This section in title 9 provides for the issuance of a warrant in certain cases against an apprentice, but the master must be summoned. Clearly this is a distinct recognition of the facts and law that the magistrates had power to issue a summons. In section 676 the form of summons against a corporation to be used is made a part of the Code of Criminal Procedure. I have stated that there is judicial recognition of the legality of the summons. One Proskey appeared before Judge Mayo when he was a police magistrate, and related to the magistrate the circumstances affecting his transaction with Cook, and asked the magistrate to issue a summons against Cook, which Judge Mayo did. The proceedings under this summons were adjourned before Magistrate Pool, who issued a warrant after hearing the facts, upon the sworn complaint of Proskey, charging Cook with larceny. The criminal proceedings eventually resulted favorably to Cook, and he thereupon commenced an action in the United States Circuit Court against Proskey for false imprisonment. The counsel in the case were J. L. Ward, who appeared for Proskey, and A. I. Elkus, who appeared for Cook. The jury gave a verdict in favor of Cook, and damages were awarded him from the date of the issuance of the summons before Magistrate Mayo; mind you, not from the date of the warrant, but from the date of the issuance of the summons until the final favorable determination of the criminal proceeding. An appeal was taken to the Circuit Court of Appeals, the bench consisting of Circuit Judges Wallace, Lacombe, and Coxe, and these judges ruled as follows: 'He initiated it by applying for the summons to Magistrate Mayo. He participated in it by signing and making oath to the complaint before Magistrate Pool. * * * The evidence authorized the conclusion that the defendant instituted the criminal proceedings solely upon the circumstances.' And the court affirmed the judgment which gave the plaintiff damages from the day that the summons was issued upon the ground that the summons was a step, and a legal step, in these criminal proceedings. The question of the jurisdiction of the magistrate to issue a summons was not raised either at the trial or upon appeal. It seems absolutely indisputable that from the earliest inception of these courts down to the present moment there is vested in its judges the right to issue a summons."

The summons having been duly issued pursuant to law, and the service thereof, together with the proceedings had pursuant thereto, being the commencement and continuance of an original criminal judicial proceeding, and it appearing from the complaint that the same was taken maliciously and without probable cause, and has terminated in plaintiff's discharge, and that he has been damaged by reason thereof, the complaint states a cause of action for a malicious prosecution.

Demurrer overruled, with costs, and with leave to defendants to withdraw same and answer within six days upon payment of costs.