## TOWNSEND v. UNITED STATES.[*]
### No. 6928.

United States Court of Appeals for the District of Columbia.

Decided Feb. 7, 1938.

[*]Writ of certiorari denied 58 S.Ct. 830, 82 L.Ed. ——.

STEPHENS, Associate Justice, dissenting in part.

———◇———

Elisha Hanson and Joseph A. Cantrel, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and H. L. Underwood, Asst. U. S. Atty., both of Washington, D. C.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

The appellant was convicted by the verdict of a jury in the District Court under an indictment charging him with violation of section 102, Rev.St., 2 U.S.C.A. § 192, which reads as follows:

"Every person who having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall

be deemed guilty of a misdemeanor, * * * "

He appeals from the judgment of conviction.

The indictment contained two counts. The court directed a verdict of acquittal on the second count, but the jury convicted appellant under the first count, which alleged in substance: That on March 10, 1936, there was pending before the House of Representatives of the United States, proposed legislation with respect to plans for old-age pensions; that a resolution was adopted by the House providing for a select committee to investigate the subject, and authorizing the committee, among other things, to require the attendance of witnesses, to issue subpoenas, and to report to the House thereon at any time, or to transmit its report to the Speaker should the House not be in session; that the committee was appointed; proceeded to carry out its instructions; and in the performance of its duties issued a summons commanding that the appellant be summoned "to be and appear" before the committee on a certain date; that the summons was served; that the appellant did appear and testify, but that: "while the said Committee was still in session and had under inquiry the matter aforesaid, and while the summons aforesaid was still in full force and effect and while the said Francis E. Townsend was still a witness before the said Committee, the said Francis E. Townsend unlawfully, knowingly and wilfully and without leave of the Committee did depart and absent himself from the presence of the said Committee and from the room and place situate in the District of Columbia where the said Committee was functioning as aforesaid, and' thereby, on the said twenty-first day of May, 1936, and within the District of Columbia, unlawfully and wilfully did make default. * * * "

■ The appellant assigns as error the admission in evidence of H.Res. 443, 74th Cong., authorizing the Speaker to appoint a select committee and instructing that committee: "to inquire into old-age pension plans with respect to which legislation has been submitted to the House of Representatives, and particularly that embodied in H.R.7154 in the United States Congress, *with special reference to the acts and conduct of any person, partnership, group, trust, association, or corporation claiming* or purporting to promote, organize, or further old-age pension legislation or schemes, and that

such committee be further instructed to *inquire into the history and records of the various proponents, operators, promoters or schemers now engaged in promoting such legislation or schemes and to gather and collect all facts and information relative thereto which would not only be of public interest but which* would aid Congress in enacting any remedial legislation upon said subject, including any lobbying and propaganda in connection therewith, and *inquire into their various methods of raising and collecting money, and to examine their books, papers, and records, and to inquire as to the disposition, holding, spending, or appropriation of such moneys so collected.* That said inquiry and investigation are material and necessary to the proper performance by Congress of its legislative functions and duty relative to the legislation hereinbefore mentioned and as an aid to such legislation." (Italics supplied.)

The resolution further provided:

"And the committee shall have the right to report to the House at any time the results of its investigations and recommendations for other or additional legislation upon said bill or any other proposed legislation relative to old-age pensions.

"That said committee or any subcommittee thereof is authorized to sit and act during the present Congress at such times and places within the United States whether or not the House is sitting, has recessed, or adjourned; to hold such hearings, to require the attendance of such witnesses and the production of such books, papers, and documents, by subpoena or otherwise, and to take such testimony as it deems necessary. Subpoenas shall be issued under the signature of the Speaker of the House of Representatives or the Chairman of said committee and shall be served by any person designated by them or either of them. The Chairman of the committee or any member thereof may administer oaths to witnesses. Every person, who, having been summoned as a witness by authority of said committee or any subcommittee thereof, wilfully makes default, or who, having appeared, refuses to answer any questions pertinent to the investigation heretofore authorized, shall be held to the penalties provided by section 102, chapter 7, of the Revised Statutes of the United States, second edition, 1878."

This resolution was set out in the count under which appellant was convicted. It constituted the authority under which the

appellant was summoned as a witness, pursuant to the provisions of section 102, Rev. St. Appellant's objection to its admission in evidence, therefore, goes back of the resolution to the indictment itself; and challenges the authority of the committee to issue the summons, as well as the propriety of punishing a witness for contempt. This question is too well settled to be reopened at this time. McGrain v. Daugherty, 273 U.S. 135, 173–175, 47 S.Ct. 319, 328, 329, 71 L. Ed. 580, 50 A.L.R. 1.

In Kilbourn v. Thompson, 103 U.S. 168, at page 189, 26 L.Ed. 377, relied on by appellant, the court expressly declined to decide whether the power to punish for contempt exists "as one necessary to enable either House of Congress to exercise successfully their function of legislation." Moreover, the observations of the court upon the point do not support appellant's contention "that Congress has no right to make an investigation into the acts and conduct of any citizen of this country, and Congress has no right to make an inquiry into the personal history or past records of citizens of this country." What the court did say is (103 U.S. 168, at page 190, 26 L.Ed. 377): "no person can be punished for contumacy as a witness before either House, *unless his testimony is required in a matter into which that House has jurisdiction to inquire,* and we feel equally sure that neither of these bodies possesses *the general power* of making inquiry into the private affairs of the citizen." (Italics supplied.)

After pointing out that the subject of the House resolution in that case was one proper only for a judicial inquiry, the court said (103 U.S. 168, at page 195, 26 L.Ed. 377): "Was it [the Congressional inquiry] to be simply a fruitless investigation into the personal affairs of individuals? * * * By 'fruitless' we mean that *it could result in no valid legislation* on the subject to which the inquiry referred." (Italics supplied.)

In McGrain v. Daugherty, supra, the court stated it to be settled law that (273 U. S. 135, at page 173, 47 S.Ct. 319, 328, 71 L. Ed. 580, 50 A.L.R. 1): "neither house is invested with 'general' power to inquire into private affairs and compel disclosures, but only with such limited power of inquiry as is shown to exist when the rule of constitutional interpretation just stated is rightly applied." The rule referred to was stated as follows: "the two houses of Congress, in their separate relations, possess, not only such powers as are expressly grant-

ed to them by the Constitution, but such auxiliary powers as are necessary and appropriate to make the express powers effective." The court then held (273 U.S. 135, at page 174, 47 S.Ct. 319, 328, 71 L.Ed. 580, 50 A.L.R. 1): "that the power of inquiry—with process to enforce it—is an essential and·appropriate auxiliary to the legislative function." Moreover, the court said that the presumption should be indulged that the object of the inquiry was to aid the Senate in legislating, even though the resolution did not expressly so avow, and even though the investigation might possibly disclose crime or wrongdoing on the part of the then Attorney General, whose name was expressly referred to in the resolution. In the present case appellant urges that the "Resolution shows on its face that the inquiry had no legislative purpose." A reading of the resolution reveals that this statement is erroneous; an avowal of legislative objective appears at several points in the resolution. As was said in McGrain v. Daugherty, supra, 273 U.S. 135, at page 177, 47 S.Ct. 319, 330, 71 L.Ed. 580, 50 A.L.R. 1: "Plainly the subject was one on which legislation could be had and would be materially aided by the information which the investigation was calculated to elicit."

■ Appellant urges that "the Committee never recommended any remedial legislation." This is clearly beside the point. The act for which appellant was indicted occurred before the hearings of the committee were concluded. Its power to conduct a hearing for legislative purposes is not to be measured by recommendations for legislation or their absence. See In re Chapman, 166 U.S. 661, 670, 17 S.Ct. 677, 41 L.Ed. 1154.

■ Appellant next contends that, having once appeared, he could not thereafter be in default; that the statute is intended to cover only two situations: (1) That of a witness who, having been summoned, fails to appear at all, or (2) who, having appeared, refuses to answer a pertinent question. Appellant undertakes to support this contention with an argument to the effect that the statute fails to cover the situation in which a witness, having appeared, walks out of the hearing room without giving testimony. He concedes that such an act may be contumacious but insists it is not covered by this statute, and that, if contumacious, the House must proceed by other means within its power for its punishment. In other words, he proposes to limit the mean-

ing of the statutory language, "willfully makes default," to "willfully fails to appear."

There is no justification for this proposed limitation. There is nothing to indicate such an intent on the part of Congress. If it had intended such a limitation, appropriate language could have been employed for that purpose. The statute speaks, generally, of a person who has been summoned —not merely to appear—but "as a witness * * * to give testimony or to produce papers." The word "appeared" occurs only in the clause—"or who, having appeared, refuses to answer." In the summons itself the appellant was required—not merely to appear—but "to be and appear" before the committee, and "not to depart without leave of said Committee." Although in logical sequence appearance would precede attendance, "be" clearly means attendance in addition to appearance. Again, it is important to note that the House resolution authorized the committee to require—not merely the *appearance*—but the *attendance* of witnesses. Had the summons read "appear before" only, it is conceivable that it could be urged that "appearance" by an attorney (as in civil cases) rather than by self would suffice. Instead, did not the committee guard against such a contingency by inserting the words "to be" in its summons to indicate that it commanded the witness "to be" *physically present* or *in attendance* and appear before the committee to testify.

To support his contention appellant relies largely upon Bouvier's definition of "summons." That definition which, in turn, is taken from Blackstone's Commentaries, speaks of a writ, issued to a sheriff or other officer, to notify a party "to appear" in court to answer a complaint made against him. It should not be necessary to point out that the word has a much wider meaning today. For example, the word *attend*, as well as the word *appear*, is sometimes used in the cases in defining "summons." Leas & McVitty v. Merriman, C.C., 132 F. 510, 513. In some jurisdictions it is not a writ or process at all but merely a notice to the defendant that an action has been commenced and that judgment will be taken against him if he fails to answer the complaint. Flanery v. Kusha, 143 Minn. 308, 173 N.W. 652, 6 A.L.R. 838; Hammond-

Chandler Lumber Co. v. Industrial Commission, 163 Wis. 596, 158 N.W. 292; Leas & McVitty v. Merriman, supra. On the other hand, "summons" has been defined as synonymous with "process" (Ackermann v. Berriman, 61 Misc. 165, 114 N.Y.S. 937), and as synonymous with "subpoena". Atherton v. Atlantic Coast Line R., 82 S.C. 474, 64 S.E. 411. In the instant case the word, as used in the pertinent statute, bears a much closer relation to the "subpoena" [1] of the common law than to the "summons" of the common law. Moreover, the resolution in the present case authorizes the committee "to require the attendance of such witnesses * * * *by subpoena* * * * as it deems necessary, * * *" and provides that "Every person who having been *summoned* as a witness * * * willfully makes default" shall be subject to penalties provided by law.

That the meaning of the word as used in the statute is much broader than contended by appellant is obvious from a reading thereof. Here the process was authorized to be issued by a legislative officer (Speaker or committee chairman)—not a court; to its own officer or "any person"; intended to operate upon a witness—not upon a party; notifying him "to be and appear" before a committee hearing testimony—not at a court; to testify—not to answer a complaint; and "not to depart without leave of said Committee." In fact, the meaning of the word in this instance varies in almost every respect from the meaning ascribed by Bouvier.

Default of a summons therefore may be default of appearance, and also default of attendance. This was undoubtedly the view of the court in United States v. Murdock, 290 U.S. 389, 397, 54 S.Ct. 223, 226, 78 L.Ed. 381 (relied upon by appellant) when it stated: "Two distinct offenses are described in the disjunctive, and in only one of them is willfulness an element. Sinclair, having been summoned, *attended* the hearing. He was therefore guilty of no willful default in obeying a summons." (Italics supplied)

Appellant argues that the court, in that case, closed the question as to what constitutes a default and limited it to the original appearance. This is obviously an improper interpretation of the language of the opinion. In the first place no question

[1] "On proof of service of a subpoena upon the witness, and that he is material, an attachment may be issued against him for a contempt, if he neglect to *attend*, as commanded." Bouvier's Law Dict., Rawle's Third Rev.

was before the court, either as to failure to appear, or as to what might happen if the witness left before the hearing was over. Consequently the court's statement was intended only to eliminate the whole question of default in obeying the summons. But it is significant that it did this by saying, not that Sinclair *appeared,* but that he *attended.* In the present case appellant attended for a while but he did not continue to attend the hearing, and his default, for this reason, is clearly consistent with the language of the court above quoted. A reasonable interpretation of the statute under which appellant was convicted is that a witness is in default if he fails not only to appear but fails to attend, following appearance, so long as the committee requires his attendance. See Blackmer v. United States, 284 U.S. 421, 443, 52 S.Ct. 252, 257, 76 L.Ed. 375; People v. Keeler, 99 N.Y. 463, 484, 2 N.E. 615, 52 Am.Rep. 49; In re Attachment of Spencer, 11 D.C. 433, 448. His release would be indicated, ordinarily, by the action of the chairman of the committee in excusing the witness, or otherwise informing him that he was no longer required to be present. The summons in the present case commanded appellant "not to depart without leave of said Committee." There can be no doubt that he deliberately absented himself before he was excused, or before any indication had been given that his attendance was no longer required. If appellant's contention were correct, a witness might walk into the hearing room of the committee; announce his identity to the chairman or members of the committee; inform them that he had no intention of staying; depart; and yet be absolved of a willful default. Such a construction of the statute would be absurd.

■ The next question presented is whether the appellant's act was willfully committed. That it was deliberate, calculated, and carefully planned is suggested by the fact that in advance of his appearance on the stand on May 21, 1936, he had prepared a brief written statement which he intended to make to the committee. Upon being requested by the chairman to take the stand, he stated that he wished to read and then submit to the committee the prepared statement. The chairman ruled that he could not read it, but could submit it. (The record does not reveal that the written statement was submitted.) Thereupon, at appellant's request, the chairman permitted him to make an oral statement, which is as

follows: "In view of the apparent unfriendly attitude of this committee and the unfair attitude it has shown to me and the members of my organization, I deem it my duty to say that I shall no longer attend these committee meetings. I am retiring from this sort of an inquisition and I do not propose to come back again except under arrest. And I do refuse absolutely to make any further statement pertaining to this movement to this committee. Thank you, and good-by, Gentlemen."

Appellant then withdrew from the hearing room. The fair inference to be drawn therefrom is that the purport of the "brief written statement" was the same as the oral statement.

"Willfully" has been defined by the Supreme Court, in United States v. Murdock, supra, as follows: "The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means [1] an act done with a bad purpose (Felton v. United States, 96 U.S. 699, 24 L.Ed. 875; Potter v. United States, 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214; Spurr v. United States, 174 U.S. 728, 19 S. Ct. 812, 43 L.Ed. 1150); [2] without justifiable excuse (Felton v. United States, supra; Williams v. People, 26 Colo. 272, 57 P. 701; People v. Jewell, 138 Mich. 620, 101 N.W. 835; St. Louis, I. M. & S. Ry. Co. v. Batesville & W. Tel. Co., 80 Ark. 499, 97 S.W. 660; Clay v. State, 52 Tex.Cr.R. 555, 107 S.W. 1129); [3] stubbornly, obstinately, perversely (Wales v. Miner, 89 Ind. 118, 127; Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427; Claus v. Chicago Great W. Ry. Co., 136 Iowa 7, 111 N.W. 15; State v. Harwell, 129 N.C. 550, 40 S.E. 48). [4] The word is also employed to characterize a thing done without ground for believing it is lawful (Roby v. Newton, 121 Ga. 679, 49 S.E. 694, 68 L.R.A. 601), [5] or conduct marked by careless disregard whether or not one has the right so to act (United States v. Philadelphia & R. Ry. Co. (D.C.) 223 F. 207, 210; State v. Savre, 129 Iowa 122, 105 N.W. 387, 3 L.R.A.,N.S., 455, 113 Am.St.Rep. 452; State v. Morgan, 136 N. C. 628, 48 S.E. 670." (Numbers in brackets added.)

It will thus be seen that the court has ascribed three general meanings to the word "willfully" and has recognized two other meanings. Appellant contends that under the statute here involved the first meaning mentioned by the court, namely, "done with

a bad purpose," is controlling. The cases cited by the court support that meaning and similar holdings are found in other cases, but, even though it applied that meaning to the peculiar facts of that case, it is clear that the court did not intend to limit the application of the word "willful" in all cases to "acts done with a bad purpose." The meaning of the word depends in large measure upon the nature of the criminal act and the facts of the particular case. It is only in very few criminal cases that "willful" means "done with a bad purpose." Generally, it means "no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law." American Surety Co. v. Sullivan, 2 Cir., 7 F.2d 605, 606. In United States v. Edwards, C.C., 43 F. 67 (cited by appellant) the court said: " 'Willfully' means with design, with some degree of deliberation." In Grand Trunk Ry. Co. v. United States, 7 Cir., 229 F. 116, 119, the court said: "The word 'willfully,' as used in the act, has a number of times engaged the attention of the courts, and has quite uniformly been held not to require an evil intent, but only that the defendant should have purposely or intentionally failed to obey the statute, having knowledge of the facts." Appellant's rights were adequately protected on this score, in any event, because the instruction given by the court defined willfully in the extremest terms. The court told the jury that the word "implies not only knowledge of the thing but a determination with a bad intent to do it or to omit doing . it in the ordinary sense in which it is used in that statute [it] means not merely voluntarily but with bad purpose. It is frequently understood as signifying an evil intent without justification or excuse."

Appellant does complain, however, that the court erred in excluding certain evidence (of which we treat later), sought to be introduced on the theory that it tended to prove justification for his act and hence to disprove willfulness. None of it was admissible on that theory and it was properly rejected by the trial court.

Justification, sufficient to offset willfulness, may mean a sufficient lawful reason for acting, or failing to act. Mercardo v. State, 86 Tex.Cr.R. 559, 560, 218 S.W. 491, 492, 8 A.L.R. 1312. Thus, justification may exist for the killing of a human being, because of imminent danger of death or of great bodily harm either to the killer (Brown v. United States, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961, 18 A.L.R. 1276) or to a member of his family (People v. Forte, 269 Ill. 505, 110 N.E. 47, L.R.A.1916B, 924), or in the execution of a sentence of death (4 Bl.Com. 178; State v. Watson, 3 Boyce 273, 26 Del. 273, 82 A. 1086); as against an accusation for escape, that the accused was illegally confined (State v. Leach, 7 Conn. 452, 18 Am.Dec. 118); as against an accusation of robbery, that the property was contraband of war (Hammond v. State, 43 Tenn. 129, 3 Cold. 129); as against an accusation of kidnapping, that the custody of the child had been awarded to the accused (In re Marceau, 32 Misc. 217, 65 N.Y.S. 717); or in case of an officer of a vessel charged with the withholding of vegetable food from the crew, because of long delay in reaching port on account of stress of weather. United States v. Reed, C.C., 86 F. 308, 311. Justification may also be based upon a mistake of fact by the defendant, where his mistake is a reasonable one and where the fact—if it were as he believed it to be—would have constituted justification. A familiar example is that of the defendant who kills in self-defense because he *reasonably believes* that he is in danger of death and that the only way to save his life is by killing his assailant. In the present case, for example, if the facts had shown that the defendant believed himself not to be the person summoned to attend, or that the committee hearing which he was attending was not the one before which he had been summoned, he might properly have defended on the ground of mistake of fact. But no such contention is made here.

On the other hand, the general rule in criminal cases is that a mistake of law upon the part of the accused does not constitute justification for his act; that, if he deliberately and intentionally commits the prohibited act, it is criminal, regardless of his belief that his act was lawful; except in cases where ignorance of the law may disprove the existence of a required specific intent. See Keedy, Ignorance and Mistake in the Criminal Law, 22 Harv.L.Rev. 75, 88; 4 Bl.Com. 27; Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 273, 73 L.Ed. 692. This is true even though the motive of the accused may be of the highest, as in the case of one who believes that his act is part of his professed religion. Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244. However, the Supreme Court has also held—perhaps on the theory that willfulness

is a type of specific intent—that where the crime involves willful intent, an accused may show justification by proving that he "honestly and in good faith seeks advice of a lawyer as to what he may lawfully do * * * and fully and honestly lays all the facts before his counsel, and in good faith and honesty follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, * * * even if such advice were an inaccurate construction of the law." Williamson v. United States, 207 U.S. 425, 453, 28 S.Ct. 163, 173, 52 L.Ed. 278. In United States v. Murdock, supra, the Supreme Court has extended this exception to the general rule even farther as applied to the particular facts of that case. There the court said:

"Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct. And the requirement that the omission in these instances, must be willful, to be criminal, is persuasive that the same element is essential to the offense of failing to supply information.

"It follows that the respondent was entitled to the charge he requested with respect to his good faith and actual belief. Not until this court pronounced judgment in United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376, had it been definitely settled that one under examination in a federal tribunal could not refuse to answer on account of probable incrimination under state law." 290 U.S. 389, at page 396, 54 S.Ct. 223, 78 L.Ed. 381. The instruction referred to reads as follows:

"If you believe that the reasons stated by the defendant in his refusal to answer questions were given in good faith and based upon his actual belief, you should consider that in determining whether or not his refusal to answer the questions was wilful." 290 U.S. 389, at page 393, 54 S. Ct. 223, 225, 78 L.Ed. 381.

In the Murdock Case it appeared that the accused was summoned before a revenue agent for examination, and questions were put to him concerning deductions claimed in his income tax returns for moneys paid to others. He refused to answer on account of probable incrimination under state

law. The uncertainty of the federal law upon this point at the time of his refusal was sufficient to justify the action of the accused, even though it developed, by a subsequent adjudication, that he was mistaken as to the law.

In the present case appellant's defense necessarily falls within the area of mistake of law. His argument reduces itself to the following formula: (1) That the proffered evidence showed the inquiry to be without legislative purpose; (2) that the appellant might have concluded therefrom that it was without legislative purpose and that this conclusion might have been the reason for his withdrawal; (3) hence that his withdrawal was justified because of his mistake of law; and consequently was not willful.

The answer to the first step in the formula is that the only proffered and excluded evidence which might have tended to show lack of legislative intent was (a) the proposed cross-examination of witness Bell as to his opinion—*at the time of the trial*—of the legislative purpose of *particular questions* asked by the committee, and (b) the reports of the committee—majority and minority—filed upon the conclusion of the investigation. Neither the witness' opinion at the time of the trial nor the committee reports could have influenced the appellant prior to his departure from the hearing, and consequently could not provide justification for his act, or raise any question in his mind—at the time of the act charged—as to the legislative purpose of the inquiry.

Appellant offered in evidence a transcript of the committee hearings for the three days during which he testified, together with a transcript of an executive meeting of the committee on the following day. These offers were rejected, but as they are not set out in the record they present nothing for our consideration. Thereafter, appellant made a series of offers of excerpts from the same transcript, which are set out in the record and which we may assume included the vital portions of the original offers. Even as a matter of law, no conclusion could properly be drawn, as to the legislative purpose of the inquiry, solely from those parts of the transcript of the proceedings which were offered—limited as they were to one executive meeting of the committee and the three days during which appellant testified. The record shows that a number of other witnesses testified, that the hearings of the committee extended

over a considerable period and covered old-age pension plans other than that proposed by defendant.

The answer to the second step in the formula is that the record is bare of any evidence—received or rejected—that the appellant ever considered or raised the question whether the inquiry had a legislative purpose. At no point in the excluded evidence is there any statement of intent, motive, purpose, or state of mind of the appellant, nor is there evidence from which the jury might have found his condition of mind. He took the stand in his own behalf and thus had every opportunity which he desired to explain to the jury his motives, intent, purpose and condition of mind in absenting himself from the committee hearing. It is significant in this connection that the only evidence given by the appellant upon the point was on cross-examination, when he admitted that he made the oral statement, heretofore set forth, at the time of his withdrawal from the hearing room. He stated therein that the committee was unfair in its attitude toward him and the members of his organization; that he was retiring "from this sort of an inquisition"; and that he refused absolutely to make any further statement pertaining to this "movement." But he did not say anything about the purpose of the investigation; unless his reference to this "movement" was a reference to purpose, in which case, instead of indicating lack of legislative purpose, it constituted a recognition of that purpose. Otherwise, the question was never raised until the time of his trial, long after he had committed the act for which he has been convicted. The question to be decided was the state of mind of the appellant at the time he left the hearing.

The day before appellant quit the committee hearing, and while he was on the stand before the committee, he sought permission to read a statement which he said concerned his old-age pension plan. Opposition to this course developed in the committee; whereupon a member of the committee offered the statement in evidence and sought permission to have appellant read it. Both were denied. Appellant complains of the refusal of the court below to admit in evidence the portion of the transcript of the committee hearing setting forth the above proceedings. This evidence had no tendency to prove lack of legislative purpose or that lack of legislative purpose was his reason for leaving. All that it could show would be disagreement between the witness and the committee as to the procedure to be followed in taking testimony. The committee, not the witness, must determine the procedure to be followed in such an investigation. There could be no orderly investigation otherwise, and the inquiry would break down. Irritation or pique upon the part of a witness, because his judgment upon such a point is contrary to that of the committee, constitutes no lawful reason and affords no justification for defying its process. Those conditions of mind do not even suggest a mistake of law, based upon a supposed lack of legislative purpose. Other excerpts from the transcript—offered and rejected—may have contained questions irrelevant or impertinent to the purpose of the inquiry, and, in that case, appellant could have refused to answer them with complete impunity. But they had no tendency to prove that the inquiry had no legislative purpose; any more than irrelevant or impertinent questions asked on examination in a court would prove that the latter was not a judicial inquiry. Nor do they suggest or indicate any mistake of law upon the part of appellant. This becomes particularly apparent when it is considered that in every instance the questions asked of appellant were answered without objection, and in no instance did he indicate that any idea existed in his mind of their lack of legislative purpose or that it might be proper for him to refuse to answer.

The answer to the third step in the formula, therefore, is that no justification could possibly have been found from the rejected evidence and that it would have been improper to permit the jury to speculate upon it.

In the present case, therefore, no such situation exists as in the Williamson Case or in the Murdock Case. There is nothing in the excluded evidence to indicate that appellant submitted the question of his duty to attend the committee hearings to an attorney and acted honestly upon that advice, relying upon it and believing it to be correct. There is nothing in the excluded evidence to indicate that there was any uncertainty in the mind of the appellant as to the law or as to his duty to attend. In other words, there is nothing in the excluded evidence to take the present case out of the general rule regarding mistake of law, or to bring it within the exceptions stated in the Williamson and Murdock Cases. Consequently there was no reason to send the evidence

to the jury upon the ground of good faith or honest belief.

As a matter of fact, the following prayer of the defendant, purporting to be based on the Murdock Case, was granted by the trial court and read to the jury: "The jury is instructed that if you believe that the reasons stated by the defendant in his refusal to remain longer at the Committee hearing were given in good faith and based upon his actual belief you should consider those reasons in determining whether or not his refusal to remain was wilful." This was clearly as far as the court properly could go, if not farther, under the rule of United States v. Murdock, supra. The reasons given by the appellant at the time of his departure were the only reasons which he ever gave for his action. No other reasons therefor appear in the excluded testimony. And the reasons which he gave were clearly insufficient to bring him within the exceptions to the general rule that mistake of law does not constitute justification.

To maintain the position of the appellant, upon the record in this case, would be to stretch the exception to the rule as established in the Murdock Case far beyond its present limits. In other words, we would be required to hold that a *bona fide* belief based—not upon an uncertainty of law actually existing or as to which he had been improperly advised by counsel—but upon his conclusion that the committee had exhibited an unfair and unfriendly attitude, would justify his act and avoid willfulness. Such a holding would overthrow the presumption of legislative purpose now accorded to legislative investigations, and defeat the purpose of the statute under which appellant was convicted, and which was enacted in aid of the legislative function. As was stated in the Murdock Case, the meaning of the word "willful" should be separately ascertained, for each statute in which it is used, according to the context in which Congress used it. It is obvious, we think, that Congress intended there should be willful default if a witness deliberately and defiantly refused to attend a committee hearing because he felt that the committee's attitude was unfriendly or unfair. This is the most that the record shows in the present case both as regards evidence admitted and excluded.

A legislative inquiry may be as broad, as searching, and as exhaustive as is necessary to make effective the constitutional powers of Congress. McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1. A judicial inquiry relates to a *case*, and the evidence to be admissible must be measured by the narrow limits of the pleadings. A legislative inquiry anticipates *all possible cases* which may arise thereunder and the evidence admissible must be responsive to the scope of the inquiry, which generally is very broad. Many a witness in a judicial inquiry has, no doubt, been embarrassed and irritated by questions which to him seemed incompetent, irrelevant, immaterial and impertinent. But that is not a matter for a witness finally to decide. Because a witness could not understand the purpose of cross-examination, he would not be justified in leaving a courtroom. The orderly processes of judicial detemination do not permit the exercise of such discretion by a witness. The orderly processes of legislative inquiry require that the committee shall determine such questions for itself. Within the realm of legislative discretion, the exercise of good taste and good judgment in the examination of witnesses must be entrusted to those who have been vested with authority to conduct such investigations. Hearst v. Black, 66 App.D.C. 313, 87 F.2d 68. A witness may exercise his privilege of refusing to answer questions and submit to a court the correctness of his judgment in so doing, but in the event he is mistaken as to the law it is no defense, for he is bound rightly to construe the statute. Sinclair v. United States, supra, 279 U.S. 263, at page 299, 49 S.Ct. 268, 273, 73 L.Ed. 692. Beyond this, he must conform to the procedure of the committee and respond to its questions. McGrain v. Daugherty, supra, 273 U.S. 135, at pages 175, 176, 47 S.Ct. 319, 329, 71 L.Ed. 580, 50 A.L.R. 1. He cannot be heard to plead justification and, hence, lack of willfulness in defiantly leaving a hearing because he does not like the questions propounded to him—remedy by objection and refusal to answer both being open to him.

There was no error in admitting in evidence in the court below testimony by the witness Kiefer concerning a conversation participated in by the appellant and the witness in Baltimore as to the publicity and psychological effect which would result if the appellant should walk out of the committee hearing or refuse to testify and appellant's agreement to carry out that pro-

cedure. The conversation was had a month after the committee was appointed, and after appellant had been informed by members of the committee in its behalf "to be available to testify any day," but prior to the service of the subpoena. This evidence, together with the appellant's attempt to submit a prepared statement, as well as the statement actually made at the time of his sudden and unexpected exit, indicated that his action was deliberate, premeditated and willful. 3 Wigmore, Evidence, 2d Ed.1923, § 1725, and cases cited thereunder; 2 Id. §§ 1048, 1071, 1079.

We have carefully considered the other assignments of error and find them to be without merit.

Affirmed.

STEPHENS, Associate Justice (concurring in part and dissenting in part).

I concur in the view of the majority that by the language used in Rev.Stat. § 102 (1875), 2 U.S.C. § 192 (1934), 2 U.S.C.A. § 192, Congress intended to denounce as a misdemeanor not only wilful failure to make an initial appearance before a 'Committee when summoned, but also wilful re-fusal to continue to appear. But I am unable to agree with the view of the majority as to the effect upon the instant case of United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, 1933. Under that case, as I read it, I think that the trial court erred in excluding from evidence the proffered excerpts from the transcript of the Committee hearing.

In United States v. Murdock, the defendant was charged with violation of a revenue act which made wilful failure to pay a tax, make a return, keep records, or supply information for the purposes of computation, assessment, or collection of the tax, a misdemeanor. At the trial the Government had proved that the defendant had refused to supply requested information to a revenue agent, and that the reason given by the defendant for his refusal was that to supply the information would incriminate him under a state statute. The defendant requested the following instruction:

"If you believe that the reasons stated by the defendant in his refusal to answer questions were given in good faith and based upon his actual belief, you should consider that in determining whether or not his refusal to answer the questions was wilful."

This instruction the trial court refused to give. On the contrary it charged the jury as follows:

"The court feels from the evidence in this case that the Government has sustained the burden cast upon it by the law and has proved that this defendant is guilty in manner and form as charged beyond a reasonable doubt."

On certiorari to the Supreme Court after the defendant's conviction, he assigned the trial court's action above described as error. An essential question before the Supreme Court was therefore whether the requested instruction should have been given. In its opinion the Court discussed the meaning of the word "wilful" as used in the statute, and held that it had a meaning which required the giving of the requested instruction. The Court said:

"The respondent's refusal to answer was intentional and without legal justification, but the jury might nevertheless find that it was not prompted *by bad faith or evil intent, which the statute makes an element of the offense.*" [Italics supplied] [290 U.S. 389, at pages 397, 398, 54 S.Ct. 223, 226, 78 L.Ed. 381.]

The Court said also, it is true, that the question whether danger of incrimination under a state statute was a lawful basis for refusal to answer by one under examination in a Federal tribunal had not been determined by the Supreme Court at the time of the defendant's refusal to furnish information. But in my view the Supreme Court meant by this merely that the unsettled state of the law was a circumstance from which the jury might properly have concluded that in refusing to supply the information the defendant was acting in good faith. Indeed, the Court immediately said:

"The trial court could not, therefore, properly tell the jury the defendant's assertion of the privilege was so unreasonable and ill founded as to exhibit bad faith and establish willful wrongdoing." [290 U.S. 389, at page 396, 54 S.Ct. 223, 226, 78 L.Ed. 381.]

In view of the very broad language of the instruction requested and held necessary, and of the very broad language used by the Court in describing bad faith or evil intent as an element of the offense denounced by the statute, I cannot think that the Court meant to rule that an unsettled state of law was the only circumstance from which an absence of bad faith or evil intent in a re-

fusal to comply with the statute might be inferred. Stating it very briefly, I think that the Murdock Case holds that even though the defendant had no legal justification for refusing to supply the information required of him, nevertheless, if his refusal was based upon an actual bona fide belief that he was not required to supply it, that belief should be considered in determining whether or not his refusal to answer was wilful in the sense of being prompted by bad faith or evil intent.

The statute involved in the instant case substantially parallels the one in the Murdock Case. In the latter, the statute made it punishable wilfully to fail to make a return or to supply information for the benefit of the executive branch of the Government. Here, it makes it a misdemeanor wilfully to make default in attending a Committee hearing and supplying information for the benefit of the legislative branch of the Government. Both statutes use the word "wilful" in application to omissions denounced. Under these circumstances, it seems to me that, as the law now stands— and certainly the defendant is entitled to be tried under the law as it now stands— exactly what was said in the Murdock Case to be the meaning of the word "wilful" must be said to be the meaning of that word here, so that bad faith or evil intent is a necessary element of the statutory offense.

The trial court concluded in the instant case that the Murdock Case, as above interpreted, was controlling, because it instructed the jury:

"If you believe that the reasons stated by the defendant in his refusal to remain longer at the Committee hearing were given in good faith and based upon his actual belief you should consider those reasons in determining whether or not his refusal to remain was wilfull."

And also:

"The word 'wilful' in the ordinary sense in which it is used in the statute means not merely voluntarily but with bad purpose."

The majority are of the view that by giving these instructions the trial court adequately protected the defendant's rights. With this I cannot agree, because I think it clear that while the Government was permitted to introduce evidence in terms of such instructions, the defendant was not. The trial court permitted the Government to introduce evidence not merely that the defendant absented himself from the Committee hearings voluntarily, but also that he did so in bad faith or with evil intent. The Government's evidence that the defendant absented himself voluntarily was the defendant's own statement that he would no longer attend the Committee hearings, together with proof that he left the hearings and did not come back. This sufficiently established that the defendant's action was wilful, if that word be taken to mean voluntary only. But the Government was permitted to go further and introduce the testimony of a witness Kiefer to the effect that at a meeting of the Board of Directors of the Old Age Revolving Pensions Ltd., held some time before the commencement of the Committee hearings, at which meeting the defendant was present, it was agreed that Dr. Townsend would walk out of the Committee hearings at the proper time for the psychological effect and the attendant publicity, if, as, and when he was subpoenaed, and to the effect that "it was considered [in this meeting] to be a masterpiece of strategy if at the psychological time Dr. Townsend would either walk out of the committee or refuse to testify."

The defendant denied agreeing to any such plan. But if the jury believed the testimony of the witness Kiefer, it might well have reached the conclusion that the defendant discontinued attendance at the Committee hearings "prompted by [the] bad faith or evil intent, which the statute makes an element of the offense" under the ruling in United States v. Murdock. Certainly, therefore, the defendant was entitled to introduce evidence, if any there was available to him, tending to prove that his default was not "prompted by bad faith or evil intent," but was, on the contrary, "in good faith and based upon his actual belief" that he need no longer attend the hearings. Seeking thus to rebut the evidence of bad faith or evil intent, the defendant first offered in evidence the entire transcript of the Committee hearings for the three days on which the defendant had testified, together with the transcript of the executive session of the Committee held on the following day. This was refused admission. The whole of this transcript does not appear in the record, and therefore it cannot be said whether the rejection of this transcript, as distinguished from the excerpts hereinafter referred to, was error. But the defendant then offered excerpts from the transcript. These are in the record and they show that he was asked, among others, the

following questions: Whether he encouraged the sentiment that he "is the embodiment of Jesus Christ"; whether he knew "The charge which is made, or alleged to be made . . . that Mr. Warmbold [apparently an associate in the Townsend movement] . . . is charged with kissing an Indian Squaw in public"; whether he often quoted the Bible; whether he belived in a Supreme Being. The trial court refused to admit these excerpts in evidence.

I think this exclusion was error. In my view, if the jury had had this evidence before it, it might have concluded therefrom that although the defendant was without legal justification for absenting himself from the Committee hearings, his so doing was not "prompted by bad faith or evil intent," but was "in good faith and based upon his actual belief" that the hearings were not being conducted for a legislative purpose, and that therefore he was not, as a matter of law, required to continue to attend; and the jury might therefore have concluded under the instructions of the court, based upon United States v. Murdock, that for lack of "bad faith or evil intent," which is an element of the offense of wilfully making default, the defendant was not guilty.

I do not say that the hearings were without legislative purpose—so that the defendant would not have been guilty of contempt, under Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377, 1880, for refusing to attend them; and I do not say that the questions referred to above were necessarily irrelevant to a legislative purpose—so that the defendant would not have been punishable, under Sinclair v. United States, 279 U.S. 263, 292, 49 S.Ct. 268, 271, 73 L.Ed. 692, 1929, for refusing to answer them. The questions may have been directed toward proving that the defendant's beliefs and associations were such as to cast doubt upon the dependability of legislation proposed by him. These points are not before us. What I say, and what seems to me clear, is that in United States v. Murdock, the Supreme Court has recognized that while one required by statute to make a return, or to supply information, may not be legally justified in failing to do so, nevertheless, the crime of wilfully failing to make a return or to supply information involves as a necessary element bad faith or evil intent. The application of this distinction in the instant case wherein the defendant is charged with the crime of wilfully defaulting, necessarily placed in issue his state of mind in defaulting, i. e., placed in issue whether he acted in bad faith or with evil intent, or in good faith. Therefore, I think that just as the Government had a right at the trial to introduce evidence of the defendant's bad faith or evil intent, so the defendant had a right to introduce evidence tending to show good faith or good intent. That right he was, in my view, denied by the exclusion of the proffered excerpts. This error—as I see it—of the trial court was undoubtedly harmful.

I think, therefore, that the judgment of conviction should be reversed and the case remanded for a new trial.