**UNITED STATES of America,
Plaintiff,**

v.

**Robert SHELTON, Defendant.
No. 1215–56.**

United States District Court
D. Columbia, Criminal Division.
Jan. 18, 1957.

928

Oliver Gasch, U. S. Atty., and William Hitz, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Joseph L. Rauh, Jr., and John Silard, Washington, D. C., for defendant.

RIZLEY, District Judge.

It is charged by indictment in three counts that the defendant, Robert Shelton, in contempt of the lawful powers

of Congress and contrary to law[1], refused on January 6, 1956, to answer certain pertinent questions propounded to him by the Senate Subcommittee on Internal Security[2] while under oath and appearing as a witness to testify in connection with an inquiry then being conducted by the Subcommittee pursuant to lawful authority.

It is the Government's position that the Subcommittee, while in the lawful exercise of the powers and duties conferred upon it by the pertinent resolutions[3], caused the defendant to appear before it on the 7th day of December, 1955, in New York City, and again on the 6th day of January, 1956, in Washington, D. C., to testify concerning his knowledge of matters pertinent to the subjects then under investigation and study by the Subcommittee in furtherance of the Congressional responsibilities in such areas of national concern. It is further asserted that upon appearing before the Subcommittee on January 6, 1956, defendant refused to answer pertinent interrogatories, including the following questions, when ordered and directed to do so by the presiding officer of the Subcommittee:

Count One: "Are you, sir, a member of the Communist Party, U. S. A.?"

Count Two: "Did you ever have any conversation with Matilda Landsman?"

Count Three: "What did you tell them?"

Defendant does not question the Government's proof that on the date and in the place alleged in the indictment, he appeared before the Subcommittee as a witness and while under oath, and after being ordered and directed by the presiding officer to do so, refused to answer the questions set out in counts one through three of the indictment. Defendant does not interpose the Fifth Amendment to the United States Constitution in justification of his refusal to answer the questions insofar as such constitutional provision prohibits compulsory self-incrimination. It is defendant's position that the evidence before this Court shows that he was justified in refusing to answer the questions because the Subcommittee was acting in excess of its lawful authority (1) in calling him at all; (2) by the Government's failure to prove that any precise "question" within the authority of the Subcommittee was under inquiry at the times in issue; (3) by the Government's failure to prove that the hearing before the Subcommittee on January 6, 1956, was pursuant the authority set out in the indictment; (4) by the Government's failure to prove that the interrogation of defendant had any legislative purpose; and (5) that the statute defining the offense defendant is charged with committing, read in conjunction with the enabling resolutions of the Subcommittee, is so vague and indefinite as to deprive the defendant of due process of law.[4]

---

1. 11 Stat. 155, as amended, R.S. § 102, 52 Stat. 942, 2 U.S.C.A. § 192.

2. The Subcommittee to Investigate the Administration of the Internal Security Act, 50 U.S.C.A. § 781 et seq. and Other Internal Security Laws of the Committee on the Judiciary of the United States Senate.

3. Legislative Reorganization Act of 1946, § 102(1) (k), 60 Stat. 818; Senate Res. 336, 81st Congress, 2nd Session (1950); Senate Res. 58, 84th Congress, 1st Session (1955); and the Standing Rules of the U. S. Senate.

4. Defendant filed his "Motion for Judgment of Acquittal", urging ten grounds

therefor as follows, which points can be fully discussed under the contentions enumerated in the body of this opinion:—

"1. The Government has failed to prove what, if any, was the question under inquiry by the committee when it called defendant.

"2. The Government has failed to prove that the questions asked defendant were pertinent to any question under inquiry by the committee.

"3. The Government has failed to prove that the question under inquiry by the committee, when it called defendant, was within the authority alleged in the indictment.

"4. The Government has failed to

The defendant is not required to adduce evidence of his innocence in the absence of proof by the Government which establishes the enumerated elements of the charged violations beyond a reasonable doubt. In criminal prosecutions for contempt of Congress, as in every criminal prosecution, the defendant is presumed to be innocent of the charges upon which he is indicted. And such presumption remains with this defendant until such time as the Government proves beyond a reasonable doubt that, as to each count of the indictment, the defendant, while appearing as a witness before a duly authorized Congressional committee,[5] was directed and ordered to answer the interrogatory set out; that the specific question was pertinent to matters within the jurisdiction of the Committee then under investigation; that the investigation was in furtherance of a proper Congressional purpose; and that the defendant refused to answer such interrogatory when so ordered and directed to do so. Quinn v. United States, 1950, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964; Bowers v. United States, 1953, 92 U.S.App.D.C. 79, 202 F.2d 447.

To establish the authority of the subcommittee, the Government introduced the enabling resolution, Sen. Res. 366, 81st Cong., 2nd Sess., 1950, which conferred original authority upon the Senate Judiciary Committee, or any duly authorized subcommittee thereof, directing such bodies "to make a complete and continuing study and investigation of (1) the administration, operation, and enforcement of the Internal Security Act of 1950; (2) the administration, operation, and enforcement of other laws relating to espionage, sabotage, and the protection of the internal security of the United States; and (3) the extent, nature, and effects of subversive activities in the United States, * * *, including, but not limited to espionage, sabotage, and infiltration by persons who

prove that on January 6, 1956, the subcommittee in question was conducting hearings pursuant to the specific authority alleged in the indictment or to any other grant of power from the United States Senate.

"5. The Government has failed to prove that the questioning of defendant and the questions which form the basis of the indictment had any valid legislative purpose. The evidence indicates that in fact the committee had no valid legislative purpose in interrogating defendant but rather sought to expose him and others to contempt and ridicule in violation of the constitutional doctrine of separation of powers which places limitations upon the exercise of legislative power.

"6. The questioning of defendant and the questions which form the basis of the indictment violated the rights of defendant and others to the freedom of speech, assembly and petition guaranteed by the First Amendment.

"7. The questioning of defendant and the questions which form the basis of the indictment violated the freedom of the press guaranteed by the First Amendment.

"8. At the time that defendant was questioned, the committee had no information that he was or had been a Communist or a member of a Communist front organization nor any other information reflecting adversely upon him. The information in the possession of the committee reflected upon Willard Shelton, a well known newspaperman rather than upon the defendant, who was called entirely by accident. Under these circumstances, the proceedings violated defendant's rights of privacy under the First Amendment and were not within any legislative power granted to or exercisable by the committee.

"9. Defendant's rights under the Fourth and Fifth Amendments were violated by arbitrary and discriminatory subpoenaing of defendant as a witness before the committee when there was no probable cause to believe that defendant had engaged in or had information about Communism, subversion, espionage or other matters within the alleged jurisdiction of the committee.

"10. 2 U.S.C. § 192, read together with the alleged authorization of the subcommittee, is so vague and indefinite as to deprive defendant of the due process of law guaranteed by the Fifth Amendment."

5. The word "committee" is used in its generic sense to include "subcommittee". Barenblatt v. United States, D.C.Cir., 240 F.2d 875; United States v. Knowles, D.C. D.C., 148 F.Supp. 832.

are or may be under the domination of the foreign government or organizations controlling the world Communist movement or any other movement seeking to overthrow the Government of the United States by force or violence." In addition thereto, the Government introduced the resolution continuing such original authority in the Judiciary Committee, or its duly authorized subcommittees, with provisions for expenditures during the 84th Congress [6], and copies of the minutes of Senate Committee on the Judiciary for January 20, 1955, wherein the subcommittee in question was by resolution continued during the 84th Congress [7], as well as a copy of the minutes of the Senate Committee on the Judiciary for February 7, 1955, listing the names of the Senators appointed to serve upon the Subcommittee on Internal Security. The copies of the minutes of the Committee were received in evidence as a part of the official records of the subcommittee over the objection that they showed no authority in the subcommittee.

The Government introduced the certification of the defendant's contempt by the United States Senate to the United States Attorney for the District of Columbia, the Senate Resolution ordering such certification, and a copy of Senate Report No. 1934, 84th Congress, 2nd Session (1956), which sets out the proceedings before the subcommittee giving rise to the citation. The documents are in proper form and neither their authenticity nor regularity is questioned.

Mr. Julius G. Sourwine appeared as a witness for the Government. His testimony disclosed that at the times in question he was the Chief Counsel for the subcommittee and personally familiar with the facts and circumstances leading up to defendant's appearances

before that body. In substance the witness testified that the subcommittee had information indicating the existence of Communist activity in newspaper and publishing fields in New York City, implicating one Matilda Landsman as being active in the Communist Party and the Typographical Union in that city. Additionally, the witness alluded to confidential information in the possession of the subcommittee which provided names of several suspected Communists employed in various capacities by certain newspapers, including the company which at that time employed Matilda Landsman and this defendant. The witness testified that the subcommittee did not have any information indicating that this defendant was either a Communist or had engaged in Communist activities. The subcommittee did, according to the witness, have information that one "Shelton", who was employed in the "news" side of a particular newspaper, was informed, if not active, in Communist infiltration into the newspaper media of mass communication.

Upon the basis of such information the subcommittee late in 1955, held an executive session in New York City, in connection with which a summons was issued to one "Willard Shelton" at a specific address, requiring his attendance on November 23, 1955, at a time and place certain. The evidence was that the name "Willard" had been affixed upon the summons by error, for in fact the subcommittee did not possess the first name of the "Shelton" linked by name to the subversive activity it sought to investigate and study. There is evidence in the record upon the manner in which the defendant's name came to be added to this summons, but the view the Court takes of this subject is that it has no relevancy to this case or any of the issues in it. This is true for the

---

6. Senate Resolution 58, 84th Congress, 1st Session, 1955.

7. "Resolved, by the Committee on the Judiciary, That the Special Subcommittee to Investigate the Administration of the Internal Security Act and Other Internal Security Laws under S.Res. 366 (81st Cong.) be continued as a Special Subcommittee of the Committee on the Judiciary during the 84th Congress and that the Committee report an appropriate original resolution favorably to the Senate for this purpose."

reason that the defendant did not initially appear before the executive session of the subcommittee pursuant to the disputed summons. The summons served upon the defendant requiring his attendance before the subcommittee on December 7, 1955, was issued on November 23, 1955, by James O. Eastland, "Chairman, Committee on the Judiciary, and Internal Security Subcommission", to Thomas J. Lunney, United States Marshal, Southern District of New York, who according to his official return thereof recited the service of the summons on the defendant by leaving a copy thereof with him at his place of employment on November 29, 1955.[8]

The official transcript of the proceedings before the subcommittee involving this defendant was admitted into evidence without objection. It clearly shows beyond any reasonable doubt that at the time and place alleged in the indictment the defendant appeared before the subcommittee, was sworn as a witness, ordered and directed to answer the three questions set out in the counts of the indictment, and refused to do so. The contentions of the defendant are urged in justification of this established conduct.

■ Defendant's contention that the subcommittee exceeded its authority in calling him as a witness under the circumstances of this case is grounded upon several propositions. The technical objections arising from the issuance, service and return of the summons were predicated upon the apparent belief that the summons originally issued to "Willard Shelton" was the process relied upon to bring the defendant initially within the jurisdiction of the subcommittee. As previously pointed out, the official transcript of the proceedings before the subcommittee which involve this defendant commenced on November 23, 1955, with the issuance of a summons which was personally served on the defendant pursuant lawful authority on November 29, 1955, and return thereof properly executed that same day. The summons requiring defendant's attendance before the subcommittee is sufficient on its face to bring him within the jurisdiction and authority of the subcommittee, and the Court so holds.

Defendant's contention that the subcommittee exceeded its authority in summoning him under the facts of this case rests upon his interpretation of the First Amendment to the United States Constitution. It is the position of the defendant that the authority of Congress to require the attendance of witnesses before its duly authorized committees, investigating matters within the legislative powers of Congress, is limited by the individual citizen's right of privacy guaranteed by the First Amendment. It is then argued that where a committee seeks to summons a witness for the purpose of taking testimony there must exist a "probable cause" for the committee to believe that such person possesses pertinent information on the subject under lawful investigation or such summons is without force or effect.

Proceeding upon the assumption that "probable cause", in the sense employed by defendant is required for issuance of a valid summons by the Congress, it is argued that the only evidence of "probable cause" in this case for the calling of this defendant as a witness was contained in the confidential letter linking the name "Shelton" with the subject under inquiry. This line of argument was relied upon in an effort to secure the confidential letter from the files of the subcommittee for inspection and introduction into the record as the "best evidence" of "probable cause". The Government objected to the request for the letter on the grounds that it is not material or relevant to issues of the case; it contains confidential information including the names of additional persons known or suspected to be active in the Communist movement; it contains the pseudonym of a confidential informant of the subcommittee.

8. Senate Report No. 1934, 84th Congress, 2nd Session (1956) p. 2.

■ The Court carefully considered defendant's contention respecting the requirement of "probable cause" for issuance of a Congressional summons, and the relevancy of the confidential letter to the issues of this case. The application for production of the letter was denied at trial and the Court is convinced that such ruling was proper in light of the law applicable to this case and the nature of the letter, as well as its relevancy, in this matter.

■ The Court has examined at length the authorities bearing upon the extent of the investigative powers of the Congress. The extent of the power has been defined in authoritative decisions by the Supreme Court written after prolonged deliberation.[9] There can be no doubt about the power of Congress, and its committees, to investigate as a necessary attribute of the duty and authority to legislate. McGrain v. Daugherty, 1927, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580; Sinclair v. United States, 1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692. And, such investigative power has been characterized as being "co-extensive with the power to legislate"[10], subject to the limitations imposed by the Fifth Amendment to the United States Constitution[11] and the right of privacy in matters unrelated to a valid legislative purpose.[12] There is a complete want of precedent for the proposition defendant urges, which in simplest terms would limit the powers of a duly authorized committee of the Congress, in conducting an inquiry for a legitimate legislative purpose, by permitting such committee, and hence Congress itself, to compel the attendance and testimony of only such witnesses as the Courts might judicially determine were "reasonably expected to be in possession of pertinent information". The doctrine of "separation of powers" and

a rightful regard for the authority of the legislative branch of government refutes a judicial evaluation of those matters which clearly are within the discretion of the Congress which alone is responsible for the exercise of the authority from which the disputed power arises.

■ The established limitations upon the Congressional investigative powers, which require a legislative purpose and inquiries pertinent thereto, provide ample protection to the private affairs of witnesses appearing before duly authorized committees of the Congress. Barsky v. United States, 1948, 83 U.S. App.D.C. 127, 167 F.2d 241, certiorari denied, 1948, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767; Quinn v. United States, supra; Barenblatt v. United States, D.C.Cir., 240 F.2d 875.

■ Beyond the fact that the Court does not find judicial power to determine what witnesses Congress may call in furtherance of its legislative purposes and compel pertinent testimony thereon, the record of this case discloses beyond any reasonable doubt that the subcommittee had information in its possession at the time defendant was initially summoned to appear before it which established a "reasonable cause" for requiring his testimony. The subcommittee had information, apart from the confidential letter which indicated Communist infiltration into the New York Typographical Union and elements of the New York newspapers, including the one by which defendant was employed. In light of these facts, it was not only reasonable for the subcommittee to call the defendant and other employees from the press organization at which he worked, such a procedure by the subcommittee appeared expedient in furtherance of its express duties. Cf. Watkins v. United States, 1956, 98 U.S.App.D.C.

---

9. The Court was two years in deciding and writing the opinion in McGrain v. Daugherty, 1927, 279 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580.

10. Quinn v. United States, 1955, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964.

11. United States v. Rosen, 2 Cir., 1949, 174 F.2d 187, certiorari denied 338 U.S. 851, 70 S.Ct. 87, 94 L.Ed. 521.

12. Kilbourn v. Thompson, 1880, 103 U.S. 168, 26 L.Ed. 377.

190, 233 F.2d 681, certiorari granted, 1956, 352 U.S. 822, 77 S.Ct. 62, 1 L.Ed. 2d 46; Barsky v. United States, supra.

■ The legislative purpose underlying the investigation and studies committed by the Senate to the committee is concisely expressed by the enabling resolutions. Legislation in the field of foreign subversion and infiltration by subversives in this country is clearly within the Congressional authority. Barenblatt v. United States, supra; Barsky v. United States, supra.

■ The defendant's contention that the Government failed to establish that any precise question, within the authority of the subcommittee, was under inquiry at the time in issue, is not established by the evidence in this case. The statement of the Chairman of the subcommittee at the commencement of the hearings in which defendant appeared in Washington, D. C., and testified, clearly show that the subcommittee was then engaged in attempting to ascertain the extent and nature of Communist infiltration into news dispensing agencies.[13] Such an inquiry is manifestly within the duties imposed upon the subcommittee by the enabling resolutions, and the authority of the subcommittee is measured by only the enabling resolutions creating it and charging it with specific duties.[14] The scope of a given hearing by a duly authorized subcommittee must be confined to those matters fairly within the delegated authority; beyond that, the subcommittee is not confined to a categorical subject within the area delegated to it pursuant to law. Cf. United States v. Knowles, D.C.D.C.1957, 148 F.Supp. 832. The Court finds that the hearing in question dealt with the existence and extent of subversive infiltration in the news media and was within the authority

of the subcommittee. The Court also finds that defendant was fully aware of the precise subject under inquiry by the subcommittee at the time of his appearance before it in Washington, D. C., as evidenced by his prepared statement objecting to the jurisdiction of the subcommittee.[15]

■ Defendant's contention that the hearing before the subcommittee on January 6, 1956, was not shown to have been pursuant to the authority set out in the indictment is contrary to the evidence. The Government placed the pertinent resolutions and minutes in the record. These documents show the original authority of the Committee on the Judiciary from the United States Senate (Senate Res. 366, 81st Congress, 2nd Session), the continuation of that committee's original authority to the time in question, and the authority of the subcommittee, as well as its composition, at the time in question. This evidence is adequate in all respects to show the authority of the subcommittee to act in the premises beyond a reasonable doubt.

■ The contention of the defendant that the hearing at which he testified and from which the indictment arose was not in furtherance of a legislative purpose proceeds on the assumption that a failure to have specific legislation in contemplation, or a failure to show that legislation was in fact redacted, establishes an absence of legislative purpose. This argument is patently unsound. The investigative power of Congress is not subject to the limitation that hearings must result in legislation or recommendations for legislation. See In re Chapman, 1897, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154; Townsend v. United States, 1938, 68 App.D.C. 223, 95 F.2d 352; Barsky v.

13. Government Exhibit 7, pp. 1587–1589, "Strategy and Tactics of World Communism, Part 17.

14. The authority of the Congress, and hence any of its Committees, is at all times limited during investigations by the requirements that the investigation

be in aid of legislation and the questions propounded pertinent to the subject matter under inquiry. Quinn v. United States, supra.

15. Senate Report 1934, 84th Cong., 2nd Session, pp. 12, 14–16.

United States, 1948, supra. The evidence defendant introduced to support his contention that a non-legislative purpose prompted the subject hearings is wanting in probative value and wholly insufficient to cast a doubt upon the true Congressional purpose underlying the delegation of the authority to the subcommittee or the purpose of the subcommittee in conducting the hearing in question. Indeed, where the subcommittee proceeds within the authority lawfully delegated to it by Congress, it would appear doubtful that want of legislative purpose could be established. Cf. United States v. Josephson, 2 Cir., 1947, 165 F.2d 82, 89, certiorari denied 1948, 333 U.S. 838, 68 S.Ct. 609, 92 L. Ed. 1122; Barsky v. United States, supra. The Court finds that the hearings in question were, beyond a reasonable doubt, conducted in furtherance of a legislative purpose and within an area subject to the legislative powers of the Congress. See Barenblatt v. United States, supra.

 The statute under which defendant is charged [16] is said to be so vague and indefinite, when read in conjunction with the enabling resolutions defining the authority of the subcommittee, as to deprive a defendant appearing before the subcommittee of due process of law. The statute in question has been judicially construed in many cases, the meaning to be attached to the words appearing in the provision is clear.[17] The statute itself is neither vague nor indefinite in its proscriptions and mandates.

Where a witness appearing before a committee of the Congress is fully apprised of the extent of the authority of the body, and is in fact fully apprised of the precise subject, within the committee's authority, which is then under inquiry, as was the defendant in this instance, the duty of the witness is clear. Any question pertinent to the matter under inquiry must be answered, except insofar as the Fifth Amendment may provide justification for a refusal to answer. United States v. Rosen, supra; Quinn v. United States, supra. The contention of statutory vagueness is without merit.[18]

The question which constitutes Count Three of the indictment is not pertinent to the subject established by the evidence to have been under inquiry at the time defendant testified. This count of the indictment will therefore be dismissed. Upon the evidence adduced at trial, it is the judgment of the Court that the defendant is guilty as charged in Counts One and Two of the indictment beyond a reasonable doubt. The verdict will be entered, the present bond of the defendant continued pending sentence. The cause will be referred to the Probation Officer for investigation and report, upon completion of which defendant will be advised of the date to appear for sentencing.

16. Title 2 U.S.C.A. § 192, 52 Stat. 942 (1946).

17. Merry, The Investigating Power of Congress, 40 A.B.A.J. 1073 (1954).

18. Cf. Watkins v. United States, 1956, 98 U.S.App.D.C. 190, 233 F.2d 681, certiorari granted, 1956, 352 U.S. 822, 77 S. Ct. 62, 1 L.Ed.2d 46.