**UNITED STATES**

v.

**Arthur MILLER, Defendant.**

**Cr. No. 164-57.**

United States District Court
District of Columbia.

May 31, 1957.

On Motion for New Trial June 28, 1957.

Oliver Gasch, U. S. Atty., William Hitz, Asst. U. S. Atty., Washington, D. C., for the Government.

Lloyd K. Garrison, New York City, Joseph L. Rauh, Jr., Washington, D. C., for the defendant.

**McLAUGHLIN, District Judge.**

The defendant is charged in the Indictment under Title 2, Section 192, United States Code Annotated,[1] with unlawfully refusing to answer questions asked of him on June 21, 1956, before a Subcommittee of the Committee on Un-American Activities of the House of Representatives then conducting hearings pursuant to the Legislative Reorganization Act of 1946, Section 121(q), (60 Stat. 828) and House Resolution 5, 84th Congress.[2]

The questions asked of the defendant, which he is charged with having refused to answer are:

"Can you tell us who were there when you walked into the room" as set forth in Count 1 of the Indictment, and

"Was Arnaud D'Usseau chairman of this meeting of the Communist Party writers which took place in 1947 at which you were in attendance?" as set forth in Count 2 of the Indictment.

The evidence before the Court establishes that it was developed during the above hearing that the defendant, a successful playwright, had been identified with movements and organizations having Communistic relationships and that the questions set forth in the Indictment had to do with a meeting of Communist Party writers in 1947, the defendant testifying before the Committee that he had attended about five or six such meetings.

To state the situation concisely, the defendant, a witness before a Subcommittee of the Un-American Activities Committee in 1956, refused to answer when asked questions as to who were present at a meeting of Communist Party writers which he attended in 1947 and whether a named individual was chairman of that meeting.

As outlined by the Court, at the beginning of this trial in considerable explanatory detail and acquiesced in, or, at least not gainsaid by the Government or by defendant, the ultimate, if not indeed the sole issue in the trial is whether the questions which defendant refused to answer before the Congressional Committee were pertinent to the question then under inquiry by that Committee.

The defendant's position is that the pertinency of the questions asked the defendant to the question under inquiry is to be tested solely by the purpose of the particular hearing at which defendant refused to answer, as that purpose was stated by the Chairman at the commencement of the hearing. This opening statement by the Chairman was:

"The hearings which the Committee on Un-American Activities are beginning this morning deal with one of the most vital aspects of our entire security problem, the fraudulent procurement and misuse of American passports by persons in the service of the Communist conspiracy."

The Government, by its counsel, stated that it would undertake to establish that said questions were pertinent to the subject of the fraudulent procurement and misuse of American passports by persons in the service of the Communist con-

1. "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony * * * upon any matter under inquiry before either House * * * or any committee of either House of Congress, * * * who, having appeared, refuses to answer any question pertinnent to the question under inquiry, shall be deemed guilty of a misdemeanor,"

2. "The Committee on Un-American Activities, as a whole or by subcommittee, is authorized to make from time to time investigations of (i) the extent, character, and objects of un-American propaganda activities in the United States, (ii) the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and (iii) all other questions in relation thereto that would aid Congress in any necessary remedial legislation."

spiracy, as announced by the Chairman of the Subcommittee.

■ At the outset defendant contends that the Subcommittee had no legislative purpose in asking the defendant the questions which formed the basis for this indictment. It is clearly requisite that the Subcommittee must have a valid legislative purpose in investigating the subject matter which is the question under inquiry, during which investigation the specific questions were asked. Barsky v. United States, 1948, 83 U.S.App.D.C. 127, 167 F.2d 241, certiorari denied, 1948, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767. The power of the Subcommittee to investigate for legislative purpose is equally clear. In the recent case of Quinn v. United States, 1955, 349 U.S. 155, 75 S.Ct. 668, 672, 99 L.Ed. 964, petitioner had appeared before a Subcommittee of the Committee on Un-American Activities and had refused to answer a question which the *Subcommittee* asked him. The Court there said:

"There can be no doubt as to the power of Congress by itself or *through its committees,* to investigate matters and conditions relating contemplated legislation." (Emphasis supplied.)

■■ Also in the case of Barenblatt v. United States, D.C.Cir., 1957, 240 F.2d 875, 880, the Court of Appeals for this Circuit said:

"There can be no doubt that Congress has the power of inquiry and investigation when the inquiry or investigation is upon a subject concerning which Congress may legislate."

It is also clear that legislative investigations are presumed to have a legislative purpose. Townsend v. United States, 1938, 68 App.D.C. 223, 95 F.2d 352. There can be no dispute concerning the right of Congress to legislate with respect to passports. In this case the Government has shown that the Subcommittee possessed information that American passports were being misused by persons connected with, and controlled by the Communist conspiracy. In Barsky v. United States, supra, the Court of Appeals of this Circuit stated [83 U.S. App.D.C. 127, 167 F.2d 245]:

"So that even as to ordinary subjects the power of inquiry by the legislature is coextensive with the power of legislation and it is not limited to the scope or content of contemplated legislation."

Since the Congress has power to legislate concerning passports, it is evident that Congress had the right to investigate the subject of passports. It follows that investigations concerning passports conducted on the basis of that right have a legislative purpose. Additional significant evidence of legislative interest of the Subcommittee as bearing on the question of legislative purpose on the part of the Subcommittee is found in the fact that following the hearings it made recommendations to the Congress regarding proposed passport legislation. In the circumstances the Court finds that legislative purpose has been established.

■ The question with which the Court is confronted is, therefore, whether the questions which the defendant refused to answer were in fact pertinent to the question then under inquiry by the Subcommittee, namely, the question of the fraudulent procurement and misuse of American passports by persons in the service of the Communist conspiracy.

Considering this question the Court turns to the evidence introduced by the Government in relation to its burden of proving beyond a reasonable doubt that the questions which defendant is accused of refusing to answer were pertinent to the question of the fraudulent procurement and misuse of American passports by persons in the service of the Communist conspiracy.

The Government has introduced evidence to show that it was the information of the Subcommittee that passports were made use of to further the aims of the Communist conspiracy and that Communists frequently had misused United

States passports for that purpose; that United States passports had been misused in that persons bearing said passports had, on various occasions, passed behind the so-called "Iron Curtain", when in fact these passports could only have been validly used in passing to and through various "Western" countries; that in some instances such travel in Communist countries was not noted upon said passports; that certain persons used aliases in traveling behind the iron curtain while they still possessed valid American passports entitling them to travel in other European countries; that defendant had joined the Communist Party in 1943; that defendant's sworn affidavit submitted to the State Department in 1956, and admitted in this trial, states in part:

"* * * to the best of my belief, I have never been a member of the Communist Party, although there were two short periods — one in 1940 and one in 1947 — when I was sufficiently close to Communist Party activities so that someone might honestly have thought that I had become a member."

that at the time the Committee called the defendant he had obtained and used a United States passport in 1947; that he used it again in 1949; that his application for a passport was denied in 1954; that at the time he testified before the Subcommittee in 1956, he had an application for a passport pending before the State Department; that defendant had, in some manner, assigned either the production rights or the copyright, or the receipts of his play, "All My Sons", which was to be produced at the World Youth Festival in Prague in 1947, to an organization which was Communist controlled, in order to facilitate the production of this play in Prague in 1947; that the organization to which the defendant had made the assignment above referred to was The League of Women in Poland identified as a branch of the Congress of American Women, which latter organization was cited as subversive and Communist by the Attorney General in June and in September, 1948, and further cited as subversive and Communist by the Committee on Un-American Activities in April, 1950; that at the time defendant was called, he had been a sponsor of a World Peace Congress in Paris in 1949 and that this Congress was controlled by the Communist conspiracy; and that the Subcommittee had information that defendant had participated in a number of Communist front activities.

The Court comes now to a consideration of that evidence which deals particularly with the refusal of defendant to answer the two questions set forth in the Indictment relating to the meeting in 1947. The Government witness is, and was when defendant testified before the Subcommittee, the Director of the Un-American Activities Committee of the House of Representatives. This witness testified that the Committee had been informed that the defendant had attended a series of meetings of Communist Party writers in 1947, the leader of which group of writers was a man named Arnaud D'Usseau; that D'Usseau in 1952—some time prior to the calling of this defendant by the Committee—had been called to testify before said Subcommittee and that he, D'Usseau, had refused to answer all questions relating to any alleged Communist Party membership or activity by him, invoking the provisions of the Fifth Amendment.

Following the aforementioned testimony the Government produced testimony for the purpose of showing why the Subcommittee was interested in the question as to who was present at the meeting in 1947 and as to who presided at such meeting. There had been previously introduced a considerable number of documentary exhibits, a part of which exhibits were now read into the record by the Government, which exhibits tended to show the continuing interest of the Committee in any legislative or executive measures designed to protect United States passports from being obtained or misused by persons within the following categories: those who were, or had been, known Communists; Communist sym-

pathizers; contributors to the Communist conspiracy; persons under the discipline of the Communist conspiracy; persons who, there is reason to believe were going abroad to engage, knowingly and wilfully, in activities which would advance the Communist movement; or persons who in any manner had engaged in activities which supported the Communist movement under such circumstances as to warrant the rebuttable conclusion that such persons were engaged, or had been engaged, in these activities as a result of Communist direction, domination or control. These documents included three bills which had been proposed in the Congress of the United States; the Internal Security Act of 1950, 50 U.S.C.A. § 781 et seq.; the Communist Control Act of 1954, 50 U.S.C.A. § 841 et seq.; and other documents containing excerpts from State Department Regulations regarding the issuance or use of passports falling within some of the above enumerated Communist categories.

It was testified to by the Government's witness that the Subcommittee was interested not only in those persons who would presently be encompassed within the above enumerated Communistic categories but also those who had in the past entered into such activities as would have placed them at some prior time within one or more of these categories.

The record in this case establishes that the evidence before the Subcommittee at the time of defendant's refusal to answer the two questions in issue showed defendant's past relationship to passports and passport applications and the State Department's inquiries as to defendant's Communistic affiliations in connection therewith. One of the defendant's passports was issued to him in 1947, the year in which he attended the meetings of writers of the Communist Party, in connection with which meetings, and with those in attendance thereat, defendant refused to answer the questions he is herein charged with refusing to answer. The Subcommittee was inquiring of defendant as to who the writers were who were in attendance at that meeting in 1947 and whether D'Usseau presided at said meetings.

It is argued by defendant that the Government has made no showing, or, indeed, no claim that the Communist Party writers who were with the defendant in the 1947 meeting, concerning whose identity defendant refused to answer questions, were themselves in the service of the Communist conspiracy engaged in fraudulent procurement or use of American passports and for that reason inquiry as to their identity was not pertinent. With this contention the Court finds itself unable to agree. In the Court's opinion the pertinency of the questions which the Committee might properly ask the witness, while conducting a hearing for a legislative purpose, is not, in the light of all the circumstances, to be determined by such a narrow test.

In Townsend v. United States, supra [68 App.D.C. 223, 95 F.2d 361], our Circuit Court of Appeals stated:

"A legislative inquiry anticipates *all possible cases* [emphasis in the opinion] which may arise thereunder and the evidence admissible must be responsive to the scope of the inquiry, which generally is very broad."

Under existing laws, Departmental regulations and proposed legislation at the time of the Subcommittee hearings, individuals having certain designated Communist backgrounds or relationships were placed in categories of persons to whom the issuance of passports was prohibited or to be prohibited. Whether defendant, a writer, and all other writers similarly situated, so far as concerns Communistic relationships, should be so prohibited by law or regulation appears to have been a matter of legitimate legislative concern to the Subcommittee. In the circumstances, an inquiry directed to defendant as to the identity of the Communist party writers with whom he foregathered for discussions of the works of Communist writers would seem to be one logically calculated to produce informa-

tion which could be of assistance to the Committee in connection with it's investigation of Communistic passport activities in relation to the aforementioned matter of legislative concern. Defendant had denied that he had ever been under Communist discipline and had testified that to the best of his belief he had never been a member of the Communist Party. He had testified further, "I was sufficiently close to Communist Party activities so that someone might honestly have thought that I had been a member." In the circumstances, it was pertinent to the inquiry being conducted by the Subcommittee to ask defendant questions that would, if answered, have given the Committee information by which it might check the correctness of defendant's testimony as to Communist membership and as to the nature and effect of his Communist activities. In the decision of our Circuit Court of Appeals, in Watkins v. United States, 1956, 98 U.S. App.D.C. 190, 233 F.2d 681, 687, now binding on this Court, it is stated:

"An inquiry may not only be detailed when credibility is involved but 'a legislative inquiry may be as broad, as searching, and as exhaustive as is necessary to make effective the Constitutional powers of Congress.'"

citing Townsend v. United States, supra. In the circumstances the Court finds that the inquiry directed to defendant as to the identity of his Communist Party writer associates was within the above-announced rule.

█ It is contended by the defendant that he had no notice of the question under inquiry which notice was necessary in order to enable him to determine whether the questions put to him, which he refused to answer, were pertinent to the question under inquiry. However, in the light of the clear statement by the Chairman at the opening of the hearing, previously quoted, defendant's contention, in the Court's opinion, lacks validity.

█ The defendant also argues that the Government has not shown that his

refusal to answer the questions which form the basis of this indictment was "willful" as required in order to constitute a violation of Section 192, Title 2, U.S.C.A. The Supreme Court of the United States in dealing with a similar contention in the case of Quinn v. United States, supra, said:

"Or the committee may disallow the objection and thus give the witness the choice of answering or not. * * * And if he does not then answer, it may fairly be said that the foundation has been laid for a finding of criminal intent to violate § 192." [349 U.S. 155, 75 S.Ct. 675.]

Also in the case of United States v. Deutch, 1956, 98 U.S.App.D.C. 356, 235 F.2d 853, 854, the Court of Appeals for this Circuit said:

"To decline or refuse to answer a question, however, is by its very nature a deliberate and willful act."

█ Defendant argues that the Government has not shown, in relation to Count One of the indictment, that there was a sufficient direction by the Subcommittee to defendant to answer the question. In United States v. Quinn, supra, [349 U.S. 155, 75 S.Ct. 677], the Supreme Court stated:

"Just as the witness need not use any particular form of words to present his objection, so also the Committee is not required to resort to any fixed verbal formula to indicate its disposition of the objection. So long as the witness is not forced to guess the committee's ruling he has no cause to complain."

In the Court's opinion, the record of the testimony of the defendant before the Subcommittee demonstrates that the defendant was sufficiently informed of the Committee's direction to him to answer the question set out as Count One of the indictment in this case.

█ Defendant further argues that he should not be held guilty of the offenses with which he is here charged because, he contends, the Subcommittee

violated Rule One of the Rules of Procedure of the Committee on Un-American activities. This rule provides that:

"No major investigation shall be initiated without approval of a majority of the Committee."

In the circumstances the Court is not persuaded that a violation of this rule has been established but, rather, that the presence of a majority of the Subcommittee at the hearing and their participation therein, without objection thereto, constitutes substantial compliance with the requirement of the rule with respect to approval.

The Subcommittee before which this defendant was appearing at the time he refused to answer the questions involved in this indictment was a lawfully constituted body acting in accordance with the duty imposed upon it by the House of Representatives of the United States to investigate un-American propaganda activities in the United States, the diffusion thereof and all other questions in relation thereto that would aid Congress in any necessary remedial legislation. At the time of defendant's refusal to answer, the Subcommittee was holding hearings in the District of Columbia within the scope of its powers, for the particular purpose of dealing with the fraudulent procurement and misuse of American passports by persons in the service of the Communist conspiracy. The hearings were being held for a legislative purpose and witnesses, including defendant, were being questioned by the Subcommittee pursuant to that legislative purpose.

The Court concludes that the Government has established beyond a reasonable doubt that the two questions asked the defendant by the Subcommittee, to wit:

"Can you tell us who were there when you walked into the room" and

"Was Arnaud D'Usseau chairman of this meeting of the Communist Party writers which took place in 1947 at which you were present?"

were pertinent to the question of fraudulent procurement and misuse of American passports by persons in the service of the Communist conspiracy.

Defendant's counsel urges upon the Court the contention that since the questions asked of defendant and which defendant refused to answer, are not pertinent on their face to the subject under inquiry, the defendant was under no compulsion to answer them and, therefore, that defendant was not guilty of a violation of the law which makes it unlawful for a witness to refuse to answer. No authority has been cited by counsel for defendant in support of the contention that a statement by a witness to a Congressional Committee that the witness refuses to answer on the ground that the question is not a pertinent one imposes on the Committee, as a condition precedent to its right to insist on an answer, the burden of stating to the witness the Committee's reason or basis for its decision that the question is pertinent. In the case of Townsend v. United States, supra [68 App.D.C. 223, 95 F.2d 361], our Court of Appeals said:

"The orderly processes of legislative inquiry require that the committee shall determine such questions for itself. * * * A witness may exercise his privilege of refusing to answer questions and submit to a court the correctnesss of his judgment in so doing, but in the event he is mistaken as to the law it is no defense, for he is bound rightly to construe the statute."

The soundness or unsoundness of the Committee's decision may be tested judicially upon a challenge upon the issue of pertinency, if and when the witness is charged with refusing to answer a question pertinent to the question under inquiry. In the case of Barsky v. United States, 1948, 83 U.S.App.D.C. 127, 136, 167 F.2d 241, 250, the Court of Appeals for this Circuit said:

"The courts have no authority to speak or act upon the conduct by the legislative branch of its own business, so long as the bounds of power

and pertinency are not exceeded * * *."

Defendant has been afforded full opportunity in this trial to make the challenge of non-pertinency to the questions.

It is on the basis of the record, under all the foregoing circumstances, that the Court concludes that the Government has established, beyond a reasonable doubt, the pertinency of the questions, involved in the indictment, which defendant has refused to answer.

■ However commendable may be regarded the motive of the defendant in refusing to disclose the identity or the official position of another with whom he was in association, lest said disclosure, as stated by defendant in seeking to justify his refusal to answer the questions involved in this case, "might bring trouble on him", that motive and that refusal have been removed from this Court's consideration by the decision of the Circuit Court of Appeals of our Circuit, now binding on this Court, in Watkins v. United States, supra, in which it is stated:

"The fact that such an inquiry or investigation may reveal something or 'expose' something is incidental and without effect upon the validity of the inquiry." [98 App. D.C. 190, 233 F.2d 687.]"

■ During the trial the Court was urged to take into account the fact that defendant had been frank and cooperative with the Subcommittee, in his appearance before that body, in answering all questions put to him except the two which he is charged with having refused to answer. In this connection the attention of the Court was directed to statements by the Committee Chairman and certain members commending defendant for his frankness and cooperation. The Court's duty and responsibility is to decide whether defendant is guilty or not guilty of violating the law in refusing to answer two questions set out in the indictment which two questions defendant is charged with having refused to answer and which the evidence establishes he did refuse to answer. However persuasive it might be to urge upon the Court consideration of the element of defendant's frankness and cooperation with the Committee in answering all other questions, in connection with the determination by the Court of the sentence to be pronounced in defendant's case, it remains clear that such element can have no bearing on the Court's determination of defendant's guilt or innocence of the offenses with which he is charged in the indictment.

Premises considered, the Court concludes that the two questions as set forth in the indictment, which the Subcommittee asked the defendant were pertinent to the question under inquiry and that defendant's refusal to answer said questions constituted a violation of Title 2, Section 192 of the United States Code Annotated.

Defendant has filed Request for Special Findings Pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The Findings made by the Court and set forth in this Memorandum constitute compliance with said request.

The Court finds the defendant guilty on both Counts. The matter will be referred to the Probation Office for report. Defendant's present bond will continue in effect pending receipt of said report.

### On Motion for New Trial, in Arrest of Judgment and for Reconsideration of Verdict

■ On May 31st this Court filed a written opinion finding defendant guilty on both Counts of the Indictment. In that opinion this Court ruled, on the authority of Townsend v. U. S., 1938, 68 App.D.C. 223, 95 F.2d 352, that a witness before a legislative committee might exercise his privilege of refusing to answer questions and submit to a court the correctness of his judgment in so doing, but that in the event he is mistaken as to the law it is no defense, for he is bound rightly to construe the statute. This Court stated on the basis of Townsend that the soundness or unsoundness of the legislative committee's decision may

be tested judicially upon a challenge on the issue of pertinency if and when the witness is charged with refusing to answer a question pertinent to the question under inquiry. This Court observed that defendant had been given full opportunity in this case to make such a judicial challenge. In the circumstances, this Court concluded that the Government had established, beyond a reasonable doubt, the pertinency of the question involved in the indictment which defendant refused to answer.

The above holdings and rulings of this Court antedated the opinion of the Supreme Court of the United States in the case of Watkins v. United States, 77 S. Ct. 1173, 1193. At the time of the announcement of the above holdings and rulings by this Court the Committee in question had never been judicially held to be under any requirement, as stated in this Court's memorandum, " * * * of stating to the witness the Committee's reason or basis for its decision that the question is pertinent". The Supreme Court in Watkins has, however, enunciated the following rule now binding on this Court:

"Unless the subject matter has been made to appear with undisputable clarity, it is the duty of the investigative body, upon the objection of the witness on the grounds of pertinency, to state for the record the subject under inquiry at that time and the manner in which the propounded questions are pertinent thereto. To be meaningful the explanation must describe what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it."

This Court holds to the view expressed in it's written opinion of May 31st that the question under inquiry by the Committee was made known to the defendant. That question was, as announced by the Chairman of the Committee at the commencement of the hearing, "the fraudulent procurement and misuse of American passports by persons in the service of the communist conspiracy". Possessing that knowledge of the question under inquiry, the defendant, on the basis of the law as it existed at the time of the legislative hearings, was required to answer the two subject questions at his peril despite any stated objection by him as to the pertinency of the question put to him to the question under inquiry before the Committee. But that requirement has now been modified. The rule of law announced in Watkins lays down the requirement that upon objection of the witness on the grounds of pertinency the legislative Committee "must describe what the topic under inquiry is, *and the connective reasoning whereby the precise questions asked relate to it.*" It now becomes the duty of the Court to apply the rule of law announced in Watkins to the instant factual situation. Responding to that duty the Court hereby makes the findings hereinafter set forth.

The Court finds that the record of the hearings before the Committee demonstrates that as to the question, "Can you tell us who were there when you walked into the room" which the Committee asked defendant and which the defendant refused to answer, as set forth in Count 1 of the Indictment, no objection was made by defendant that said question was not pertinent to the question under inquiry before the Committee; that in the circumstances the Committee was under no requirement to state to defendant the manner in which the propounded question was pertinent to the subject under inquiry at that time; that defendant's refusal to answer said question constituted a violation of Title 2, Section 192, United States Code Annotated, with which violation he is charged in Count 1 of the Indictment.

The Court finds that the record of the hearings before the Committee demonstrates that as to the question "Was Arnaud D'Usseau chairman of this meeting of the Communist Party writers which took place in 1947 at which you were in attendance?" which the Committee asked defendant and which defendant

refused to answer, as set forth in Count 2 of the Indictment, objection was made by defendant that the question asked by the Committee was not pertinent to the inquiry as to whether defendant should have a passport or there should be passport legislation in 1956; that the Committee did not, thereupon, comply with the requirement laid down in Watkins by stating to defendant the manner in which the propounded question was pertinent to the subject under inquiry at that time, or, in other words the Committee did not "describe * * * the connective reasoning whereby the precise question asked related to (the topic under inquiry)"; that in the circumstances defendant's refusal to answer said question did not constitute a violation of Title 2, Section 192, United States Code Annotated, with which violation he is charged in Count 2 of the Indictment.

Premises considered, the Court hereby overrules defendant's motion for new trial and defendant's motion in arrest of judgment and sustains defendant's motion for reconsideration of its verdict, and upon reconsideration of said verdict, in the light of the ruling announced by the Supreme Court in Watkins, the Court modifies said verdict to the extent of holding that the verdict of guilty against defendant for a violation of Title 2, Section 192, United States Code Annotated for refusal to answer the question "Was Arnaud D'Usseau chairman of this meeting of the Communist Party writers which took place in 1947 at which you were present?" set forth in Count 2 of the Indictment be and the same is hereby set aside and that in lieu of said verdict of guilty as to the said charge against defendant contained in said Count 2 of the Indictment the Court hereby finds defendant not guilty of said charge in said Count 2 of the Indictment. The verdict of guilty as to the defendant as to Count 1 of the Indictment shall remain in full force and effect.